IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **KENNETH PRITCHARD,**<br><br>**Plaintiff,**<br><br>v.<br><br>**METROPOLITAN WASHINGTON AIRPORTS AUTHORITY.**<br><br>**Defendant.** | Civil Action No.  1:18-cv-1432-AJT-TCB |

### PLAINTIFF'S OPPOSITION TO DEFENDANT METROPOLITAN AIRPORTS AUTHORITY'S MOTION TO DISMISS

Defendant's Motion to Dismiss relies on selective facts, omits important context, and distorts Mr. Pritchard's allegations.  Defendant imposes a heightened standard on Mr. Pritchard's claims that is incorrect at the pleadings stage.  Finally, Defendant errs in claiming that an actionable hostile work environment cannot be based on retaliation.  Because Mr. Pritchard more than adequately has stated claims of relief, this case must be resolved on its merits and Defendant's Motion to Dismiss must be denied.

  I.   INTRODUCTION

Undoubtedly, Mr. Pritchard's employment with Defendant has been tumultuous.  A man with strong convictions, Mr. Pritchard has been vocal in voicing his disagreements with Defendant's actions when he viewed them to be unlawful. Compl. ¶¶ 19-25, ECF No. 1. Particularly, in 2010, Mr. Pritchard began opposing a variety of practices that he viewed to be rooted in discrimination.  *Id.* ¶¶ 20, 25. His opposition escalated, and, in 2016, Mr. Pritchard

denounced Defendant's decisions to, *inter alia*, downgrade or abolish altogether positions held by white employees, but not equivalent positions held by minority employees; provide higher pay to minority employees, but not white employees in equivalent positions; and adversely impact women employees in their administration of benefits. *Id.* ¶ 23(a)-(g). In November 2016, Mr. Pritchard opposed Defendant's intent to downgrade only one of four over-graded positions based on race. *Id.* ¶ 23(g).

In January 2017, after Defendant initiated an investigation into Mr. Pritchard, he disclosed to the investigator that he viewed the investigation itself to be an act of discrimination and retaliation. *Id.* ¶¶ 21-22. Defendant proposed his removal on January 19, 2017 and fired him on February 7, 2017. *Id.* ¶¶ 13-14.

## II.     LEGAL STANDARDS DISFAVOR DISMISSAL AT THE PLEADING STAGE

The Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A properly stated claim needs only to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Specific facts are not necessary[.]" *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (per curium).

"To survive a motion to dismiss pursuant to Rule 12(b)(6), plaintiffs' '[f]actual allegations must be enough to raise a right to relief above the speculative level,' thereby 'nudg[ing] their claims across the line from conceivable to plausible.'" *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Whether success is ***probable*** is not required: "Rule 8(a) establishes a pleadings standard without

regard to whether a claim will succeed on the merits. 'Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" *Swierkiewicz v. Sorema*, 534 U.S. 506, 515 (2002). "Although the Supreme Court has made clear that the factual allegations in a complaint must make entitlement to relief plausible and not merely possible, what Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations." *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) (internal quotation marks and citations omitted). The complaint need not contain "detailed factual allegations," and it need not leave even a charitable reader with the sense that recovery is likely. *Twombly*, 550 U.S. at 555-556.

Further, a "heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2)." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007) (reiterating the *Swierkiewicz* standard); *Johnson v. City of Shelby, Miss*, 135 S. Ct. 346, 347 (2014) (same). Indeed:

> In the employment discrimination context […] a plaintiff need not establish a prima facie case under *McDonnell Douglas* in order to survive a motion to dismiss. *Swierkiewicz*, 534 U.S. at 510–11, 122 S.Ct. 992 (concluding that "the prima facie case ... is an evidentiary standard, not a pleading requirement."). "This Court has never indicated that the requirements for establishing a *prima facie* case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id*. at 511, 122 S.Ct. 992. Complaints in such cases therefore "must satisfy only the simple requirements of Rule 8(a)." *Id*. at 513, 122 S.Ct. 992.

*Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013). See also, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[A] complaint that states a plausible claim for relief survives a motion to dismiss.").

While a court may, under Rule 12(b)(6), "consider documents attached to the complaint[,] as well as those attached to the motion to dismiss, so long as they are integral to the

3

complaint and authentic[]"—*Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)—the district court may go beyond those pleadings only if the court converts the proceeding to one for summary judgment. Fed. R. Civ. P. 12(d). But, such a conversion requires that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*.

### III.   MR. PRITCHARD STATES A CLAIM OF RETALIATION UNDER TITLE VII (COUNT I)

Defendant asserts that Count 1 of Mr. Pritchard's Complaint—that he was terminated due to illegal retaliation—fails to state a claim. MTD at 4-5. To reach this conclusion, Defendant ignores important disclosures and improperly fragments the rest. *Id.* First, Defendant exclusively focuses on Mr. Pritchard's participation as a witness in co-worker Andrea Bickley's Charge of Discrimination to support dismissal of Mr. Pritchard's retaliation claim. *Id.* at 4. This argument is misplaced because Mr. Pritchard's participation in Ms. Bickley's EEOC Charge is not his sole protected act. *See, e.g.,* Compl. ¶¶ 22-25.

As Defendant recognizes, Mr. Pritchard alleges a host of protected EEO activity that spanned multiple years. MTD at 5; Compl. ¶22-25. His protected activity should be considered *in toto*. *Accord*, *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir.1990) ("A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario").

Second, Defendant incorrectly argues that Mr. Pritchard's protected activity ended in November 2016. MTD at 5. Defendant's arguments fail because it omits Mr. Pritchard's January 2017 disclosure, where he reported to Defendant's investigator that "Defendant was

4

discriminating and retaliating against Plaintiff for his prior EEO activity by instigating the investigation." Compl. ¶ 22. Within weeks, Defendant—through Vice President Vegliante—proposed his removal. *Id.* ¶ 13 (January 19, 2017 Proposed Removal). Shortly thereafter, Vice President Vegliante sustained his own proposal and effectively terminated Mr. Pritchard on February 7, 2017. *Id.* ¶ 14. Because the adverse action occurred within a month of Mr. Pritchard's most recent protected activity, he plainly has pled sufficient facts to establish an inference of causation. Additionally, Mr. Pritchard's collection and preservation of evidence to support his concerns of unlawful activity are themselves protected. *Quinlan v. Curtiss-Wright Corp.*, 8 A.3d 209, 224 (analyzing cases), 226-28 (N.J. 2010); *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 725-26 (6th Cir. 2008).

Even if Mr. Pritchard's protected activity ended in November 2016—which it did not—Defendant's arguments still fail. Defendant exclusively relies on cases where—***at summary judgment, after the parties had an opportunity to engage in discovery***—temporal proximity was the only evidence, and in those cases, this Court has held that, without more, an *inference* of causation cannot be sustained. Moreover, under Defendant's own legal analysis, three months is not too remote as a matter of law. MTD at 3-4 (citing time lapses between four months to multiple years). Retaliation can occur even after a substantial time gap. *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004). Moreover, temporal proximity is not the only way to show causation. *Che v. Massachusetts Bay Transp. Authority*, 342 F.3d 31, 38 (1st Cir. 2003) (temporal proximity or a pattern of antagonism can prove causation); *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (temporal proximity is unnecessary if there is a "pattern of antagonism" following protected activity). Here, Mr. Pritchard has pled sufficient facts to infer that his relentless reporting motivated Defendant to harass him and, ultimately, to terminate him.

Additionally, Defendant's request to strike "untimely" protected activity is baseless. MTD at 5.  No case law supports Defendant's request—and, Defendant cites to none.  Indeed, the numerosity of Mr. Pritchard's disclosures, and Defendant's increasingly negative reactions to them, raise an inference of unlawful motive to which Mr. Pritchard is entitled at the pleadings stage. Thus, Defendant's request and Motion to Dismiss should be denied.

### IV. MR. PRITCHARD STATES A CLAIM OF DISCRIMINATION UNDER TITLE VII (COUNT II)

#### a. Mr. Pritchard Has Sufficiently Alleged Comparator Evidence

Defendant appears to argue that Mr. Pritchard's claim of discrimination is speculative and implausible because of alleged deficiencies in his comparator evidence. MTD at 5-7. As an initial matter, Mr. Pritchard's comparator evidence is simply one indicator of discrimination, but it is not his only evidence.[1]  Compl. ¶¶ 15, 39-47.

Here, Mr. Pritchard alleged that he and Deborah Lockhart had the "same supervisory chain."  *Id*. ¶ 40.  He alleged that he and Ms. Lockhart were members of different protected classes.  *Id*. ¶¶ 41 ("Ms. Lockhart is African American and female"), 42 ("Plaintiff is Caucasian

---

[1] As the Court explained in *Bryant v. Aiken Reg'l Med. Centers Inc*., 333 F.3d 536 (4th Cir. 2003):

> ARMC contends that Bryant did not offer evidence that she was treated differently from a similarly situated white applicant or that the hospital ever hired a less qualified white applicant for a position Bryant sought. This argument misapprehends the requirements of Title VII: Bryant is not required as a matter of law to point to a similarly situated white comparator in order to succeed on a race discrimination claim. *See Columbia Colleton Med. Ctr*., 290 F.3d at 648–49 n. 4 (holding that plaintiff need not prove that she was better qualified than a successful applicant if other circumstantial evidence suggests discrimination).

*Id.* at 545.

and male"). Mr. Pritchard sufficiently described Defendant's accusations of misconduct against himself, as compared to Ms. Lockhart's misconduct. Specifically, "[i]n January and February 2017, Defendant management falsely accused Plaintiff of bullying a subordinate (Ms. Endicott), making her sick, "repeatedly" screaming at subordinates and otherwise being verbally abusive and violent, stealing ("pilfering") Defendant documents, and so forth." *Id*. ¶27(h)(vi). Meanwhile, Mr. Pritchard believed that Ms. Lockhart engaged in *worse* and more extensive misconduct[2] when she:

> violated Defendant's code of ethics by engaging in nepotism in hiring (her own relatives) and facilitating and approving nepotism in hiring by other managers and high-echelon officials; improperly used employees as personal shoppers/servants; required two new hires to her own staff to work without pay (and thus violated the FLSA); ignored an employee's complaint of continuing FLSA violation; engaged in conduct that compromised the safety and security of the airports through improper acceptance of incomplete or missing background checks while serving as the appointing official for these new hires; rigged selection panels (for hiring and promotion) to skew the outcome to the benefit of favored individuals or groups (and thus violated Title VII); was verbally and otherwise abusive to subordinates to the point of forcing those employees to seek, and quit for, employment elsewhere and to resign or retire; falsely reported employment statistics and other workplace data used by high-echelon officials; committed time and attendance fraud (for herself and others); committed health benefits plan abuse by seeking to cover, and obtaining coverage [for] an ineligible family member; improperly set pay to favor employees by race; manipulated hiring processes to improperly favor the hiring and promotion of career and temporary employees on the basis of race; abused the temporary services contract hiring process to favor the hiring of temporary service workers for Defendant on the basis of race; supported nepotism and contravened equity in contracting; benefitted financially from a contract/contractor she used on a recurring basis; and committed other violations of ethics, federal employment law, merit staffing and merit contracting processes.

Compl. ¶ 44. Although the same Defendant managers were aware of Ms. Lockhart's misconduct, they did not terminate her. *Id*. ¶ 46-47.

---

[2] To be clear, Mr. Pritchard does not concede that he engaged in the misconduct alleged by the Defendant.

7

Comparators do not have to be identical. *Sprint v. Mendelsohn*, 552 U.S. 379, 380-82 (2008) (Evidence from other employees admitted even when "[n]one of the" proposed "witnesses worked under the supervisors" of the Complainant or worked "in her chain of command," and even though their testimony concerned "supervisors who played no role in the adverse employment decision challenged by the plaintiff."); *Miller-El v. Dretke*, 545 U.S. 231 (2005) (A *per se* rule that a defendant cannot win a *Batson* claim unless there is an exactly identical white juror would leave *Batson* inoperable; potential jurors are not products of a set of cookie cutters.). *See also*, *Aka v. Washington Hospital Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1988 (en banc); *Morris v. WMATA*, 702 F.2d 1037, 1045-46 (D.C. Cir. 1982). Even before the *Mendelsohn* case, "the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical[,]" *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000), and "[w]hether two employees are similarly situated ordinarily presents a fact question for the jury." *Id*. Thus, information about the alleged comparators is discoverable, *Woods v. Friction Materials Inc.*, 30 F.3d 255 (1st Cir. 1994), making dismissal premature.

Indeed, comparator evidence is but one way to show causation, and is not required at all if the evidence points to other indicators. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996). This is particularly true when an employee occupies a unique position where there are few potential comparators.

Because Mr. Pritchard has alleged sufficient comparator evidence, Defendant's Motion to Dismiss should be denied.

### b. Contrary to Defendant's Arguments, Mr. Pritchard is a Member of a Protected Class

Defendant argues that Mr. Pritchard, as a white male, is not a member of a protected class. MTD at 7-9. To reach this conclusion, Defendant relies solely on two unpublished, non-binding decisions.[3] *Id.* However, Supreme Court precedent and this Court's analysis weigh against imposing a heightened standard on "reverse discrimination" plaintiffs. In *McNaught v. Virginia Cmty. Coll. Sys.*, 933 F. Supp. 2d 804, 819–20 (E.D. Va. 2013), this Court held:

> After reviewing the cases on both sides, the Court concludes that it will apply the standard *McDonnell Douglas* test and will not require McNaught to make an enhanced showing. The Court finds the extra or enhanced showing required by the Sixth, Seventh, Eighth, Tenth, and D.C. Circuits is "vague and difficult to apply." *Stock*, 817 F.Supp. at 1306; *see Iadimarco*, 190 F.3d at 161–63 (finding the enhanced test to be "irremediably vague and ill-defined" and problematic in application). In contrast, the standard "*McDonnell Douglas* test is well-established" and "generally understood." *Stock*, 817 F.Supp. at 1306. Moreover, the Court believes that application of the same test to both "ordinary" discrimination plaintiffs and "reverse" discrimination plaintiffs better reflects overarching principles expressed by the Supreme Court. *See Bass*, 256 F.3d at 1103 (refusing to adopt enhanced test for these reasons). For example, in *McDonald v. Santa Fe Trail Transportation Company*, the Supreme Court made clear that Title VII prohibited reverse discrimination "on the same terms" as discrimination against minority groups. 427 U.S. 273, 280, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). In addition, the Fourth Circuit has acknowledged that the Supreme Court has held that the "same 'exacting judicial examination' is applicable to any classification on the basis of race, regardless of the type, purpose, or alleged victim of the racial distinction" and that the "level of scrutiny does not change merely because the challenged classification operates against a group that historically has not been subject to governmental discrimination." *Hayes v. North State Law Enforcement Officers Ass'n*, 10 F.3d 207, 212 (4th Cir.1993) (quoting *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 273, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986)). For these reasons, the Court will apply the ordinary *McDonnell Douglas* test to McNaught.

---

[3] *Callahan v. Prince William Cty. Pub. Sch.*, No. 1:16-CV-00167, 2016 WL 7106394, at *3 (E.D. Va. Dec. 5, 2016) and *Adams v. High Purity Sys. Inc.*, No. 1:09CV354 (GBL), 2009 WL 2391939, at *1 (E.D. Va. July 2, 2009), aff'd, 382 F.App'x 269 (4th Cir. 2010). MTD at 8.

Additionally, a more recent decision than those cited by Defendant—*Weinerth v. Talley*, No. 4:17-CV-00067, 2018 WL 2729205, at *4 (W.D. Va. June 6, 2018)—arrived at the same conclusion. *Id.* ("For the reasons discussed in *McNaught*, the court is of the opinion that the fact that Weinerth is not a member of a racial minority does not alter the analysis applicable to her claim of race discrimination.") (citing also *Shomo v. Apple. Inc*., No. 7:14CV00040, 2015 WL 777620, at *4 n. 3, 2015 U.S. Dist. LEXIS 22499, at *8 n. 3 (W.D. Va. Feb. 2, 2015), report and recommendation adopted., No. 7:14CV00040, 2015 WL 777620, 2015 U.S. Dist. LEXIS 21616 (W.D. Va. Feb. 24, 2015)).

Further, *Weinerth* more closely adheres to Mr. Pritchard's facts. While Mr. Pritchard has not alleged that Defendant issued a formal affirmative action plan or diversity policy, much of Mr. Pritchard's protected activity revolved around Defendant's reliance on race in making job-related determinations. *See, e.g.,* Compl. ¶¶23-24. In *Weinerth*, the court concluded:

> At this stage of the proceedings, the court finds the School Board's first argument unpersuasive. To be sure, courts have held that "the mere existence of a diversity policy, without more," is insufficient to make out a prima facie case of discrimination under federal employment statutes like Title VII. *Jones v. Bernanke*, 493 F.Supp.2d 18, 29 (D.D.C. 2007); *see also Reed v. Agilent Techs., Inc*., 174 F.Supp.2d 176, 185-86 (D. Del. 2001) ("Merely producing anecdotal evidence regarding the aspirational purpose of an employer's diversity policy, and its intent to ameliorate any underutilization of certain groups, is not sufficient."), However, evidence that such policy was "actually relied upon" in taking a specific employment action may support a finding of unlawful discrimination. *Reed*, 174 F.Supp.2d at 186*; see also Humphries v. Pulaski Cty. Special Sch. Dist.*, 580 F.3d 688, (8th Cir. 2009) (joining several of its sister circuits, including the United States Court of Appeals for the Fourth Circuit, in concluding that "evidence that an employer followed an affirmative action plan in taking a challenged adverse employment action may constitute direct evidence of unlawful discrimination") (*citing Brown v. McLean*, 159 F.3d 898, 904 (4th Cir. 1998) ); *Footland v. Daley*, No. 00-1571, 2000 WL 1575289, at *1–2, 2000 U.S. App. LEXIS 26632 at *4 (4th Cir. Oct. 23, 2000) (affirming summary judgment for the employer where there was no evidence supporting the plaintiff's allegation that an adverse employment decision was based on a diversity policy favoring the hiring and/or promotion of minority females over white males).

Ratifying Defendant's interpretation would directly contradict the plain language of Title VII. Defendant also overextends *Callahan* and *Adams*; neither case stands for the proposition that a plaintiff must demonstrate (especially at the pleadings stage) that an employer "discriminates against the majority (White males)[.]" *Callahan* was decided on summary judgment and only referenced the higher standard in passing, without substantive analysis. *Callahan v. Prince William Cty. Pub. Sch.*, No. 1:16-CV-00167, 2016 WL 7106394, at *3 (E.D. Va. Dec. 5, 2016). Further, *Adams* concedes that the Fourth Circuit "declined to expressly rule on this issue[]" in *Lucas v. Dole*, 835 F.2d 532, 534 (4th Cir. 1987). *Lucas* was decided pursuant to a motion under the former version of Fed. R. Civ. P. 41(b). The court found that Lucas had presented "some other evidence" sufficient to justify a remand for completion of the trial.

Therefore, Mr. Prichard has stated a plausible claim and Defendant's Motion to Dismiss should be denied.

### V. MR. PRITCHARD STATES A CLAIM OF RETALIATORY HOSTILE WORK ENVIRONMENT UNDER TITLE VII (COUNT III)

Defendant appears to argue that Mr. Pritchard cannot establish a hostile work environment on the basis of retaliation. MTD at 9-10. In support of its argument, Defendant contends that Mr. Pritchard does not allege "race or sex, or any other protected characteristic." *Id.* at 9. Without any citation to case law, Defendant argues that Mr. Pritchard's complaints about EEO violations is "not a protected characteristic." *Id.* at 10. Defendant's position is incorrect as a matter of law.

Undoubtedly, a hostile work environment claim based on retaliation *is* cognizable under Title VII. *See generally DeMasters v. Carilion Clinic,* 796 F.3d 409, 420 (4th Cir. 2015); *see also Burke v. Mattis*, 315 F. Supp. 3d 907, 912–13 (E.D. Va. 2018) (describing "straightforward" legal

11

issues, which included a retaliatory hostile work environment.) To establish a retaliatory hostile work environment claim, Mr. Pritchard must show that the hostile treatment he received could deter a reasonable employee in his position from engaging in protected activity. Retaliation claims are decided by standards that are different than those governing other discrimination and harassment claims. Most notably, the assessment of what employer actions can constitute reprisal is determined by *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 67-70 (2006). Under *White*, retaliation claims need only be materially adverse and sufficient to deter reasonable employees from protected activity. Because retaliatory adverse treatment need not directly affect a term and condition of employment, the degree of harm caused by such an action "goes to the issue of damages, not liability." *Id*. (*citing Hashimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir. 1997); see also, *EEOC v. L.B. Foster Co.*, 123 F.3d 746, 754 n. 4 (3d Cir. 1997); *Smith v. Dep't of the Navy*, 659 F.2d 1113, 1120 (D.C. Cir. 1981)). The familiar "severe or pervasive" standard of *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993), applies to harassment claims whereas *White* applies to retaliation cases.

Here, Mr. Pritchard has complained about a multitude of EEO violations. Compl. ¶¶ 20-25. He alleges that the Defendant responded by creating a hostile work environment, which culminated in his termination. *See id*. ¶¶27-28 (providing a detailed list of harassing incidents). For example, Mr. Pritchard alleged that, in 2010, when he began complaining about Title VII violations, Defendant also began excluding Mr. Pritchard from an array of work meetings and removed his access to internal information systems. *Id.* ¶ 27(b). Mr. Pritchard alleged that Defendant refused to recognize his accomplishments and included derogatory information in his performance appraisals. *Id*. ¶27(d), (g). Further, Mr. Pritchard alleged that Defendant "told Plaintiff (March 23, 2013) to "stop acting like an auditor" when Plaintiff reported inequitable

pay treatment of an African American male employee (John Jackson) in violation of Title VII to CEO Potter[,]" *Id.* ¶ 27(a)(v). In short, Mr. Pritchard has alleged that Defendant humiliated, threatened, and interfered with his work performance for years.

For purposes of pleading a hostile work environment, Mr. Pritchard has met his burden of pleading sufficient facts to allow a reasonable inference that he experienced changes in the terms and conditions of his employment and that his protected activities formed its basis. Accordingly, Defendant's Motion to Dismiss should be denied.

### VI.  CONCLUSION

In sum, Mr. Pritchard has met his burden of pleading sufficient facts to alert Defendant to the nature and specifics of his claim. For the foregoing reasons, Mr. Pritchard respectfully requests that the Court deny Defendant's Motion to Dismiss Plaintiff's Complaint.

Respectfully submitted,

/s/ Nina Ren
James M. Eisenmann, Esq. (appearing pro hac vice)
Email: jeisenmann@kcnlaw.com
Nina Ren, Esq. (VSB No. 86434)
Email: nren@kcnlaw.com
Kalijarvi, Chuzi, Newman & Fitch, P.C.
818 Connecticut Avenue NW, Suite 1000
Washington, D.C. 20006
Direct Dial: 202-558-5968
Office: 202-331-9260
Facsimile: 1-866-879-6171

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of March, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Joseph W. Santini, Esq. (jsantini@dclawfirm.com)
>Friedlander Misler, PLLC
>5335 Wisconsin Avenue, NW, Suite 600
>Washington, D.C. 20015
>
>*Counsel for the Defendant*

                                                  /s/ *Nina Ren*
                                                  Nina Ren