IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KENNETH PRITCHARD,<br><br>                              Plaintiff,<br><br>v.<br><br>METROPOLITAN WASHINGTON<br>AIRPORTS AUTHORITY<br><br>                              Defendant. | Civil Action No. 1:18-cv-1432-AJT-TCB |

### AFFIDAVIT OF GAIL P. ENDICOTT

My name is Gail P. Endicott and I reside in Waldorf, Maryland. I am over eighteen (18) years of age and am competent to testify. I make the following declaration based on my personal knowledge of the following facts:

1. I am a Compensation Senior Specialist for the Metropolitan Washington Airports Authority ("Airports Authority").

2. I am a White (Caucasian) female.

3. I began employment with the Airports Authority on September 5, 2006 working in the Airports Authority's Compensation and Classification department, which was managed by Kenneth Pritchard. My office was physically proximate to Mr. Pritchard's office.

4. I worked under the supervision of Mr. Pritchard from the time of my hiring until he was placed on administrative leave in November 2016. Mr. Pritchard promoted me in April 2016, which resulted in a pay raise.

5. Shortly after Anthony Vegliante became the Vice President for Human Resources in 2013, Mr. Pritchard began to refer to Mr. Vegliante and Airports Authority CEO John Potter, as the "brain trust." Sam Pulcrano, who was hired as an assistant to Mr.



Vegliante, was identified as part of the "brain trust" as well.

6. It became clear to me that Mr. Pritchard believed there was an "Us v. Them" dynamic between the Compensation office and executive management.

7. Mr. Pritchard stated on more than one occasion that he was "going to get them" in reference to Mr. Vegliante, Mr. Potter and others. Mr. Pritchard was obsessed with changes which Mr. Vegliante was attempting to implement. Mr. Pritchard also insisted he was, some day, going to write a blog and expose how corrupt MWAA is.

8. In the fall of 2015, Mr. Pritchard became so enraged during a Compensation staff meeting that he screamed he "hates these people" in reference to Mr. Vegliante and Mr. Potter, and that he was going to be a "thorn in their side."

9. In 2015 and 2016, Mr. Pritchard routinely yelled, slammed doors and stomped about the office. He would routinely go into Jennifer Howard's office, close the door (although the yelling could be heard down the hall) and yell and complain about all these people.

10. In 2015 and 2016, during Compensation staff meetings, Mr. Pritchard often used profane language, gritted his teeth in anger, glared at his staff and made profane gestures in the direction of Mr. Potter's offices on the floor above. He would routinely refer to Mr. Vegliante and Mr. Potter as those who "don't know what they don't know" and characterized them as incompetent.

11. Mr. Pritchard asked me, on more than one occasion, to "investigate" and keep tabs on certain Airports Authority employees, including former Human Resources Vice President Arl Williams. Mr. Pritchard assigned me to use the internet to investigate an award which was made to Vice President Goutam Kundu (Information

2

Technology) by an IT industry magazine. He wanted to know who nominated Mr. Kundu for that award. I was directed to get that information at whatever cost. I did not understand what this assignment had to do with the duties of our office, although I did know that Mr. Pritchard was hostile to Mr. Kundu and believed him to be close buddies with Mr. Vegliante. Mr. Pritchard suspected that Mr. Kundu and Mr. Vegliante were making decisions about the grade and compensation for new IT employees without his input.

12. Mr. Pritchard once came late to a meeting that I and other members of his department were attending and demanded that we all leave the room. Once we had left the room, he proceeded to yell at us for attending the meeting without him being present (even though it was him that was late and everyone else from Human Resources was attending the meeting). Ironically, immediately prior to this meeting, he had held a 5-minute meeting in his office to tell all of us in his department to be very careful that we not provide any information/answers and take copious notes during the Human Resources meeting.

13. Mr. Pritchard told me and others in our work group, that if we "cooperated" or helped Mr. Vegliante or others in executive management or "on that side" (he would point to the other side of the building where Mr. Vegliante and Mr. Pulcrano sat), that we were no longer a member of his department. And we should look for a job with them. He made this threat on more than one occasion. We were also told at one point not to answer any questions posed by Mr. Vegliante, Mr. Pulcrano, or anyone else in management, and were instructed to say "SEE KEN PRITCHARD."

14. Mr. Pritchard's worsening behavior caused me significant emotional and physical

distress. I was overly stressed at work especially during the summer of 2016. I began gaining weight, suffered upset stomach and other intestinal issues, and headaches all of which I attributed to the stressful and toxic work environment created by Mr. Pritchard's behavior.

15. Mike Rumberg, Mr. Pritchard and I were involved in a compensation and benefits survey which we were developing to send to regional/local government entities and domestic aviation entities to gather information on pay and benefits. Mr. Rumberg, Mr. Pritchard and I met nine times during the summer of 2016; frequently Mr. Pritchard, when he did not agree with Mr. Rumberg's answers, would yell and put up his open hand in his face, yelling "STOP, STOP, STOP." Mr. Pritchard told me privately that he hated Mike Rumberg and even called his former manager to find out if he had exhibited similar personality traits at his former job. I simply could not take the stress of witnessing this anymore and decided that the only choice I had was to file a complaint with Robin Wade in Labor and Employment Relations in early November 2016.

I solemnly declare and affirm, under penalty of perjury under the laws of the United States, that the contents of the foregoing paper are true and correct to the best of my knowledge, information and belief.

Date: 9/6/19

Gail P. Endicott

4