**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

KENNETH PRITCHARD,

                          Plaintiff,

v.                                      Civil Action No. 1:18-cv-1432-AJT-TCB

METROPOLITAN WASHINGTON
AIRPORTS AUTHORITY

                          Defendant.

**DEFENDANT METROPOLITAN WASHINGTON AIRPORTS AUTHORITY'S**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION IN**
**LIMINE TO EXCLUDE CERTAIN EVIDENCE INTENDED TO BE INTRODUCED BY**
**THE PLAINTIFF**

Defendant Metropolitan Washington Airports Authority ("MWAA"), by counsel, hereby

submits this Memorandum of Points and Authorities in support of its Motion in Limine to

Exclude Certain Evidence Intended to be Introduced by the Plaintiff Kenneth Pritchard

("Pritchard"). In support of the instant Motion, Defendant states as follows:

**I.      PRELIMINARY STATEMENT**

Throughout the First Amended Complaint ("Complaint") and the depositions in this case,

Pritchard has been focused on the years 2010-2012, when he believes he suffered discrimination

and retaliation at the hands of Arl Williams ("Williams"), the then Vice President of Human

Resources.  Pritchard believes that his role as a whistleblower led to an investigation by the DOT

OIG and that he has suffered because of his disclosures regarding wrongful practices in the

2010-2012 time period.

Indeed, MWAA was the subject of a DOT OIG investigation, which culminated in the

publication of a report in November 2012 outlining the failings of some MWAA personnel.  The

current CEO and President of MWAA, John Potter ("Potter"), was hired while the investigation was underway because the MWAA Board recognized that there was a need for new leadership to address those failings. That is why Potter ended up giving not one, but two, vice presidents, including Williams, the choice of resignation or termination. After Williams departed, Pritchard was restored to his former place in the hierarchy of MWAA by Potter, who was serving as the acting Vice President for the Office of Human Resources for a short time, until May 2013.

In May 2013, Vegliante was hired to serve as the new Vice President of Human Resources, and became Pritchard's immediate supervisor. He was hired, in part, to right the wrongs that occurred under Williams and to establish best practices in the Office of Human Resources. Vegliante's hiring represents a clean break with the past, and therefore complaints about actions which predate his arrival simply have no probative value in assessing the existence of a hostile work environment or Vegliante's motivation in terminating Pritchard in February 2017. Pritchard has complaints about the slights he supposedly suffered at the hands of Vegliante, but these, as well as the launching of an investigation following the receipt of a complaint from one of Pritchard's subordinates, bear no nexus or connection to the actions which occurred prior to May 2013.

## II.     STANDARD OF REVIEW

All relevant evidence is admissible unless there are constitutional, statutory, and rule-based exceptions preventing its admission. *See* Fed. R. Evid. 402 (2019). Irrelevant evidence is never admissible. *Id.*

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a) (2019). Federal Rule of Evidence 403 provides that relevant evidence may be excluded,

...if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading he jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

F. R. Evid. 403 (2019).

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. <u>Luce v. United States</u>, 469 U.S. 38, 40 n. 2 (1984). A court's ruling regarding a motion *in limine* is "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]." <u>Luce</u>, 469 U.S. at 41. A district court's rulings on the admissibility of evidence are reviewed for abuse of discretion. <u>See</u> <u>Burgess v. Bowen</u>, 2012 U.S. Dist. LEXIS 142631, 3-4 (*citing* <u>United States v. Perkins</u>, 470 F.3d 150, 155 (4th Cir. 2006)).

### III.   ARGUMENT

**A. Evidence of alleged discrimination, retaliation and hostile work environment which predated the hiring of Anthony Vegliante in May 2013 should be excluded because it is irrelevant, misleading, will confuse the issues and the danger of unfair prejudice significantly outweighs its probative value should it be admitted.**

Pritchard filed suit in this Court alleging that he had been subject to numerous acts, dating back to 2010, of discrimination and retaliation, and to a hostile work environment, on the basis of his race (White), sex (Male) and due to alleged protected activity under Title VII and as a whistleblower under two federal statutes. <u>See</u> Complaint, Doc. 31. However, these alleged discrete acts, occurring as long ago as 2010 and many of which took place before Vegliante became Vice President of Human Resources and Pritchard's direct supervisor, are irrelevant to the present case.

As illustrated in the attached Affidavit by Potter, MWAA's President and CEO, the DOT OIG investigation into MWAA was already underway when Potter joined MWAA in July 2011.

*See* Affidavit of John Potter, attached hereto as Exhibit 1, ¶¶ 3, 4.  Potter was hired by MWAA's Board of Directors in large part because of Board Members' concerns with the operation of MWAA.  *Id.* at ¶ 4.

After joining MWAA, Potter was interviewed by the DOT OIG and provided, either directly or through other MWAA employees, all assistance requested by the DOT OIG, including the production of information and documents.  *Id.* at ¶ 5.  Although Potter was aware that Plaintiff claimed to have been a "whistleblower," he had no knowledge of any information that Pritchard allegedly provided to the DOT OIG which was not also provided by other MWAA employees at Potter's direction during the course of the DOT OIG investigation.  *Id.* at ¶13.

Moreover, Potter was so concerned about the practices of MWAA's Office of Human Resources, which at the time was led by Vice President Williams, that, although he believed the DOT OIG was investigating that office, Potter directed that MWAA retain an outside law firm (Arendt Fox) to conduct its own investigation of the Office of Human Resources.  *Id.* at ¶¶ 6 – 8. As a result of the Arendt Fox investigation, the on-going DOT OIG investigation and Potter's own observations at MWAA, Potter determined that Williams could no longer continue his employment at MWAA.  *Id.* at ¶ 9.  Williams was offered the opportunity to resign or be terminated, and resigned in October 2012.  *Id.*

Potter took over the management of the Office of Human Resources following Williams' resignation for a short time, and in May 2013, Vegliante was hired to assume the Vice President role previously held by Williams.  *Id.* at ¶ 10.  Potter hired Vegliante to establish new personnel policies and implement best practices for MWAA, and to correct the problems within the Office which had developed while Williams headed it.  *Id.*

Potter made other changes within the senior leadership at MWAA.  George Ellis

("Ellis"), the V.P. of Technology, was terminated based upon an internal investigation, although his termination was later changed to a "resignation" following threatened litigation. _Id._ at ¶ 11. In short, Potter made numerous changes at MWAA in an effort to remedy the many issues which existed before he joined MWAA. _Id._ at ¶ 12.

Pritchard should not be permitted to introduce evidence in this case of events that occurred prior to May 2013, the month that Vegliante, the MWAA Vice President who terminated Pritchard's employment in February 2017, was hired. _See_ _e.g._ Complaint, Doc. 31, ¶¶ 31 – 38; Plaintiff's Exhibit List, Doc. 50. Much of the pre-May 2013 evidence Pritchard intends to offer involves the actions of Vegliante's predecessor at MWAA, Williams, who left MWAA's employ in October 2012, seven months before Vegliante's arrival. None of this pre-May 2013 evidence should be permitted in this case.

Vegliante was Pritchard's first-level supervisor once he began employment at MWAA in May 2013. _See_ Vegliante's Affidavit, Doc. 45-9. Additionally, Vegliante was the "decision maker" who proposed to terminate Pritchard's employment on January 19, 2017, and who actually terminated Pritchard's employment on February 7, 2019. _See_ _Id._ Cleary, the alleged discrimination, retaliation or acts creating a hostile work environment that occurred before May 2013 – much of which took placed under Williams – cannot be attributed to Vegliante, Williams' successor. There are no allegations in the Complaint that Vegliante harbored any animus against Pritchard based on the acts taken against him by Williams. Indeed, such an allegation would be nonsensical.

Additionally, as noted in Potter's attached Affidavit, MWAA engaged in a general "house cleaning" in the 2012 to 2013 time frame, during and following the DOT OIG investigation. _See_ Exhibit 1. Williams was removed from his position (as were others in senior

management) and Vegliante and others were brought into MWAA in part to help remedy the problems that had occurred under Williams. *Id.* at ¶¶ 7 – 10. The introduction of irrelevant evidence of acts Pritchard alleges to have been discriminatory or retaliatory, or to have created a hostile work environment, that occurred under Williams more than six years before his termination in February 2017, would confuse and mislead the jury as to the ultimate issues in the case, would be severely prejudicial to MWAA, and would have little, if any, probative value to the case's ultimate issues.

**B. Evidence regarding the DOT OIG investigation or Pritchard's alleged contacts with the FBI should be excluded because it is irrelevant, confusing, misleading and the danger of unfair prejudice significantly outweighs its probative value should it be admitted.**

Pritchard seeks to introduce evidence in this case of his alleged involvement as a "whistleblower" in the DOT OIG investigation, or of his discussions with the FBI regarding alleged wrongdoing at MWAA during the time of the DOT OIG investigation. The DOT OIG investigation started in the spring of 2011 and ended in November 2012 with the issuance of the DOT OIG's report on the investigation. Any involvement by Pritchard with the OIG or the FBI would have occurred in this period, well over six years prior his termination from MWAA and also before Vegliante, the termination decision-maker, was hired.

Moreover, the alleged wrongdoing which Pritchard "blew the whistle on" occurred under Williams, was thoroughly investigated by the DOT OIG and was corrected by Potter long before Pritchard's termination for wrongdoing in February 2017. To be sure, there is no evidence that Vegliante knew anything about Pritchard's involvement in the DOT OIG investigation or with the FBI, and thus could not have retaliated against Pritchard on this basis when he terminated him in 2017. As before, this evidence would merely confuse and mislead the jury, create unfair

prejudice toward MWAA, and would have little, if any, probative value on the ultimate issues in this case.  Evidence regarding the DOT OIG investigation and Pritchard's involvement with it or with the FBI should be excluded.

> **C. Evidence regarding the treatment of Deborah Lockhart, George Ellis, Williams and Steve Baker for comparator purposes should be excluded because they are not similarly situated to Pritchard and/or were not supervised by Vegliante.**

As argued in MWAA's Motion for Summary Judgment, Pritchard should not be permitted to introduce evidence regarding the treatment of Deborah Lockhart ("Lockhart"), Ellis, Williams and/or Steve Baker ("Baker") for comparator purposes at the trial of this matter.  These four individuals are not proper comparators in this case.

In the Fourth Circuit, to be similarly situated, a plaintiff and a comparator must be "similar in all relevant respects."  *Haywood v. Locke*, 387 Fed.Appx. 355, 359 (4th Cir. 2010).  The plaintiff and the alleged comparator must "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id*. quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992).

Williams, Ellis and Baker were all Vice Presidents who reported directly to the new CEO Potter, who had no involvement in the decision to terminate Pritchard.  Pritchard was only a manager who reported to Vice President Vegliante, so neither Williams, Ellis or Baker are similarly situated in terms of employment to Pritchard.  In any event, Williams was given the choice to resign or be terminated, Ellis was terminated, and Baker was investigated by outside counsel who made no finding of an EEO violation.  *See* Doc. 45, pp. 8, 19 – 21.

Lockhart had the same supervisor as Pritchard (first Williams, then Vegliante), but

Lockhart's conduct in improperly approving a subordinate's use of leave is not similar to Pritchard's abusive conduct which resulted in his termination.  *Id.*  Indeed, Lockhart's supposed conduct which occurred before Vegliante's arrival at MWAA is irrelevant; Vegliante could not be held to task for failing to take disciplinary action against Lockhart for conduct that allegedly occurred before his employment at MWAA.  Additionally, there is no evidence that anyone complained to Vegliante about Lockhart's treatment of subordinates, such as the complaint made against Pritchard by Gail Endicott, nor that Lockhart was insubordinate toward Vegliante as was Pritchard.  Put simply, there is no evidence that Lockhart and Pritchard engaged in substantially similar conduct such that a comparison between the two may be made.

Since these alleged comparators were not similar "in all relevant respects" to Pritchard, evidence regarding their treatment should be excluded from trial.  Such evidence is irrelevant, and the admission of same would confuse and mislead the jury, and would be more prejudicial than probative.

**IV.    CONCLUSION**

For the above reasons, MWAA respectfully requests that this Court grant its Motion in Limine.

Respectfully Submitted,

FRIEDLANDER MISLER, PLLC

/s/ Joseph W. Santini

Joseph W. Santini, Esq., Va. Bar # 47377
Lindsay A. Thompson, Va. Bar # 83175
5335 Wisconsin Ave., NW, Suite 600
Washington, DC 20015
202-872-0800
202-857-8343 (fax)
jsantini@dclawfirm.com
lathompson@dclawfirm.com

*Attorneys for Defendant Metropolitan Washington Airports Authority*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the 20th day of September 2019, I sent the above

Memorandum of Points and Authorities in Support of Motion in Limine via the Court's ECF

system, to:

Richard Renner, Esq.
James M. Eisenmann, Esq.
Nina Y. Ren, Esq.
KALIJARVI, CHUZI, NEWMAN & FITCH, P.C.
818 Connecticut Ave., NW, Suite 1000
Washington, D.C. 20006

/s/ Joseph W. Santini

Joseph W. Santini