IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KENNETH PRITCHARD,<br><br>         Plaintiff,<br><br>v.<br><br>METROPOLITAN WASHINGTON<br>AIRPORTS AUTHORITY<br><br>         Defendant. | Civil Action No. 1:18-cv-1432-AJT-TCB |

**DEFENDANT METROPOLITAN WASHINGTON AIRPORTS AUTHORITY'S MOTION TO STRIKE NON-RESPONSIVE PORTIONS OF PLAINTIFF'S OPPOSITION TO MOTION IN LIMINE AND REPLY TO PLAINTIFF'S OPPOSITION TO MOTION IN LIMINE TO EXCLUDE CERTAIN EVIDENCE INTENDED TO BE INTRODUCED BY THE PLAINTIFF**

Defendant Metropolitan Washington Airports Authority ("MWAA"), by counsel, hereby submits this Motion to Strike non-responsive portions of Plaintiff Kenneth Pritchard's ("Pritchard") Opposition to MWAA's Motion in Limine (hereinafter, the "Opposition"), and Reply to Pritchard's Opposition to MWAA's Motion in Limine. In support thereof, MWAA states as follows:

**I. Pritchard's inclusion of argument and exhibits which are non-responsive to the Motion in Limine should be stricken, as they constitute an attempted Sur-Reply to MWAA's Motion for Summary Judgment.**

Pritchard's Opposition contains substantial argument which strays far afield from the arguments made in MWAA's Motion in Limine. For instance, there is nothing within MWAA's Motion in Limine which relates to the 180 / 300 day time for filing a charge of discrimination, yet that argument appears within Pritchard's Opposition. *See* Opposition, p. 7. Pritchard's Opposition's argument that he has legal bases for his harassment claim (presumably he refers to his hostile work environment claim) also has nothing to do with the arguments raised in the

Motion in Limine. *Id.* Pritchard attaches a number of exhibits to the Opposition, including his 2012 performance review, which are not responsive to any argument raised in the Motion. Additionally, Pritchard's Opposition argues that his termination was a pretext for unlawful discrimination, which again, has nothing to do with the arguments raised in MWAA's Motion. *Id.* at pp. 8 – 9.[1] Put simply, much of Pritchard's Opposition is in actuality an impermissible Sur-Reply to MWAA's Motion for Summary Judgment. Indeed, this tactic is even more evident when viewed next to Pritchard's last minute attempt to rewrite his Opposition to the Motion for Summary Judgment (Doc. 65). This should not be permitted, and those arguments which are non-responsive to the Motion in Limine should be stricken from the Opposition.

> II. **Pritchard's Opposition has not demonstrated why evidence of any alleged retaliation or hostile work environment before May 2013 is relevant, or should be admitted even if relevant.**

Strangely, Pritchard's Opposition attempts to recast the multitude of alleged discrete retaliatory acts set forth in his First Amended Complaint ("Complaint") into mere evidence of protected activity. *See* Opposition, pp. 2 – 4. But this is not what Pritchard's Complaint has pled, and he cannot now change the alleged discrete acts of retaliation that occurred over the years into timely evidence to support what he now claims was, apparently, the only retaliatory act against him – his termination in February 2017.

To support this argument, Pritchard also makes the bizarre claim that MWAA "admitted

---

[1] In any event, Sunderland's testimony does not create a pretext with regard to Pritchard's termination. As Bruce Heppen states in his Affidavit, Kletzkin was one of the few lawyers available to conduct the investigation following the receipt of Endicott's complaint, and Heppen viewed Endicott's complaint as being serious enough to require an investigation; other men have also been investigated at MWAA for alleged harassment of female subordinates. *See* Heppen's Affidavit, Ex. 7 to MWAA's Motion for Summary Judgment, ¶¶ 6, 7, 11.

that they fired Pritchard at their first opportunity." *Id.* at p. 3. This is a patently false statement. The evidence Pritchard cites to support this claim merely demonstrates that Pritchard had not been disciplined before the incident involving Gail Endicott ("Endicott"). No witness was asked, let alone admitted, that MWAA fired Pritchard at the first opportunity presented.

In fact, the evidence in this case shows that Pritchard could have been disciplined before his termination in February 2017. Vegliante testified that he did have cause to discipline Pritchard in 2014, but declined to do so. *See* Vegliante's Deposition, attached as Exhibit 5 to MWAA's Motion for Summary Judgment, pp. 14:21 – 16:7. At that time, a complaint had been made against Pritchard by Deborah Lockhart, but instead of disciplining Pritchard, Vegliante counseled him and defused the issue. If Vegliante, the deciding official regarding Pritchard's termination and Pritchard's supervisor, wanted to take the first available opportunity to terminate Pritchard's employment, or take any other adverse employment action against him, he could have done so in 2014. As such, Pritchard's reliance on the line of cases regarding "first opportunity" is completely meritless. *See* Opposition, p. 3.

Pritchard then makes the ludicrous assertion that "a reasonable jury could conclude that Vegliante harbored bias against a subordinate who had successfully levied complaints about his previous supervisor, Arl Willaims ("Williams"), who was then investigated, and ousted." *Id.* at p. 4. This makes absolutely no sense. Vegliante got the job *because* Williams was removed. There would be no logical reason for Vegliante to "harbor bias" against Pritchard because Pritchard complained about Williams. Vegliante says that he does not know what role Pritchard played in the DOT-OIG investigation and does not know what Pritchard meant when he says he was the whistleblower. *See* Motion for Summary Judgment, Doc. 45, SUMF ¶ 35. Although Pritchard challenges the credibility of several witnesses including Kletzkin and Endicott (Opp. to

3

MSJ, Doc. 59, at pp. 17 - 19), he does not dispute Vegliante's credibility. All of the personnel deficiencies identified by the DOT-OIG were remediated by MWAA years ago, and the matter was closed out on Dec. 28, 2015. *See* Affidavit of Julia Hodge, Exhibit 1 to MWAA's Reply to Pritchard's Opposition to Motion for Summary Judgment. The IG investigation lives on only in Pritchard's imagination. It has no power to motivate anyone currently in the management of MWAA, and Pritchard has no evidence that it does.

Pritchard claims that Vegliante had a motive to retaliate against him because he knew about Pritchard's disclosures of "unlawful discrimination" as shown in Exhibit 1 to his Opposition. *See* Opposition, Ex. 1. But there is no protected activity under Title VII referenced with any specificity in Exhibit 1. Indeed, Pritchard has never identified a single complaint which was filed by any employee regarding any of the alleged EEO violations he references, and he has not identified any EEO proceedings in which he participated (other than the reference to Andrea Bickley in his Complaint, a proceeding which occurred in 2011 and as such is incredibly untimely in this case). Pritchard has no expertise with regard to EEO requirements, and his many observations about what he considered to be EEO violations are little more than garden variety personnel issues. Although Pritchard complains of "merit system" problems and other personnel and policy issues, and makes bare unspecified references to Title VII violations, he does not disclose anything that amounts to protected activity under Title VII in Exhibit 1.

Pritchard's claim that Lockhart retaliated against him is far-fetched. *Id.* Lockhart was another manager, not Pritchard's supervisor. She could not retaliate against him as she had no authority over him and did not control a single aspect of his job. She could not take any adverse employment action against him.

Pritchard claims that Exhibit 2 to his Opposition shows Potter and Vegliante retaliated

against him because his department was excluded from "workflow." See Opposition, Ex. 2. But Pritchard fails to explain how this is an adverse employment action, and Vegliante's notes (as set forth in Ex. 2) clearly show he knew nothing about it and wanted to know more about it from Pritchard. This is not evidence of retaliation.

Pritchard makes the misleading assertion that "MWAA's attorneys" knew he was critical of Vegliante and Potter, and that "this was a motivating factor in the decision to fire him." Id. at p. 5. Although Pritchard seems to argue that MWAA's attorneys knew this *before* Kletzkin's investigation, the evidence is that this behavior was uncovered *during* Kletzkin's investigation. Vegliante testified he knew nothing about it prior to receiving Kletzkin's report, and Pritchard has no evidence to the contrary. Indeed, although Pritchard impugned the credibility of some witnesses in his Opposition to MWAA's Motion for Summary Judgment, he never impugns Vegliante's credibility. Moreover, calling your boss (Vegliante) an "idiot" and the CEO of MWAA an "incompetent" is not "protected activity" under any law, let alone Title VII. To be certain, this behavior was a "motivating factor" in his termination, as Vegliante has testified, as it evidences insubordination, but it is not evidence of retaliation under Title VII.

Pritchard cites to the Fourth Circuit case of Buckley v. Mukasey, 538 F.3d 306, 318-21 (4th Cir. 2008), to support his argument that protected activity from a prior case should be admissible to prove retaliation in the present case. See Opposition, p. 6. But that case is distinguishable. In Buckley, the DEA was still living with the consequences of the "Segar" litigation as there were compliance orders still in effect. Id. at 318. The Fourth Circuit noted that "the pendency of Segar and the long history of its burden weighed heavily on decisionmakers." Id. Contrast that with the current case, where the issues identified by the DOT OIG were resolved in 2015 to the OIG's satisfaction. See Hodge Affidavit, Ex. 1 to Reply to

5

Opposition to Motion for Summary Judgment. As John Potter noted, he participated in the DOT OIG investigation himself, and directed that MWAA employees assist the OIG in the investigation. *See* Potter Affidavit, attached as Ex. 1 to Motion in Limine. There is simply no evidence to suggest, as Pritchard argues, that Vegliante (or Potter or Sunderland), was concerned with the DOT OIG investigation at the time Endicott made her complaint, or that Vegliante considered his participation in that investigation when making the determination to fire him.

Pritchard makes peculiar arguments on pages 8 and 9 of his Opposition that evidence regarding Williams would be admissible even if Pritchard had not complained about him, and that a jury could conclude Endicott complained about Pritchard in order to save her job because of how she "weathered the years-long conflict between Pritchard and Williams, Potter and Vegliante." *Id.* at pp. 8 – 9. Regarding Williams, Pritchard seems to argue that a jury should be permitted to consider whether the investigation into Williams' conduct shows some kind of motive regarding the investigation into his conduct. But he fails to explain how exactly such evidence would be relevant. Pritchard's argument regarding Endicott defies explanation.

### III. Pritchard fails to demonstrate that he had 300 days to file his Charge of Discrimination against MWAA.

Pritchard does not cite to any authority which demonstrates that a charge of discrimination may be filed against MWAA within 300 days (deferral jurisdiction) of the adverse employment action rather than within 180 days. Instead, Pritchard makes the confusing claim that he "should not be faulted for relying on the EEOC's web page about the time limits," indicating that the only reason he filed his charge as late as he did was through some misunderstanding of the time period applicable to claims against MWAA *Id.* at p. 7. But Pritchard is not *pro se*; he has had experienced employment attorneys assisting him throughout

this entire process.  Moreover, his attorneys did file his Charge within 180 days of his termination, suggesting that they knew full well that the applicable time period to file such a charge was 180 days.  This argument is meritless.

> **IV.     Pritchard bizarrely argues that he should be permitted to introduce comparator evidence, even though he has abandoned his race and sex discrimination claim.**

Pritchard abandoned, and withdrew, Count II of his Complaint (Race and Sex Discrimination) in his Opposition to MWAA's Motion for Summary Judgment, yet bizarrely claims in his Opposition (to the Motion in Limine) that comparator evidence of MWAA's treatment of African-Americans and women (Lockhart, Williams, Baker and Ellis) should be admissible to prove unlawful discrimination.  *Id.* at pp. 12 - 15.  Certainly, comparator evidence used to support different treatment based on race and sex is irrelevant where no claim of race or sex discrimination is present in the case.  Amazingly, Pritchard spends four pages in his Opposition trying to convince this Court to admit evidence to support a no longer existent discrimination claim.

WHEREFORE, for the above good and valid reasons, and those set forth in MWAA's Motion, MWAA respectfully requests that this Court grant its Motion in Limine.

Respectfully Submitted,

FRIEDLANDER MISLER, PLLC

/s/ Joseph W. Santini

Joseph W. Santini, Esq., Va. Bar # 47377
Lindsay A. Thompson, Va. Bar # 83175
5335 Wisconsin Ave., NW, Suite 600
Washington, DC 20015
202-872-0800
202-857-8343 (fax)
jsantini@dclawfirm.com
lathompson@dclawfirm.com

*Attorneys for Defendant Metropolitan Washington Airports Authority*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the 3rd day of October 2019, I sent the above Reply to Plaintiff's Opposition to Motion in Limine via the Court's ECF system, to:

    Richard Renner, Esq.
    James M. Eisenmann, Esq.
    Nina Y. Ren, Esq.
    KALIJARVI, CHUZI, NEWMAN & FITCH, P.C.
    818 Connecticut Ave., NW, Suite 1000
    Washington, D.C. 20006

/s/ Joseph W. Santini

Joseph W. Santini