In the Matter of:

**Kenneth Pritchard**
**v.**
**Metropolitan Washington Airports Authority**

Hearing

October 4, 2019



Phone: 703-837-0076
Fax: 703-837-8118
Toll Free: 877-837-0077

1010 Cameron Street
Alexandria, VA 22310
transcript@casamo.com

```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE EASTERN DISTRICT OF VIRGINIA

 3                     Alexandria Division

 4

 5   -----------------------------------:

 6   KENNETH PRITCHARD,                  :

 7             Plaintiff,               :

 8   vs.                                 : Case No.

 9   METROPOLITAN WASHINGTON AIRPORTS    : 1:18-cv-01432

10   AUTHORITY,                          :

11             Defendant.               :

12   -----------------------------------:

13                                   Alexandria, Virginia

14                                   Friday, October 4, 2019

15

16            The above-entitled matter came on to be

17   heard before the HONORABLE ANTHONY J. TRENGA, Judge in

18   and for the United States District Court for the

19   Eastern District of Virginia, Alexandria Division,

20   located at 401 Courthouse Square, Alexandria, Virginia,

21   commencing at 10:01 a.m., when were present on behalf

22   of the respective parties:
```

```
 1              A P P E A R A N C E S

 2

 3    On behalf of Plaintiff:

 4       NINA YUANYUAN REN, ESQUIRE

 5       RICHARD R. RENNER, ESQUIRE

 6       Kalijarvi, Chuzi, Newman & Fitch, P.C.

 7       818 Connecticut Avenue, Northwest

 8       Suite 1000

 9       Washington, D.C. 20006

10

11    On behalf of Defendant:

12       JOSEPH WALTER SANTINI, ESQUIRE

13       LINDSAY ALLAIRE THOMPSON, ESQUIRE

14       Friedlander Misler, PLLC

15       5335 Wisconsin Avenue, Northwest

16       Suite 600

17       Washington, D.C. 20015

18

19

20

21                    *   *   *   *   *

22
```

```
 1              P R O C E E D I N G S

 2         THE CLERK:  Civil Action Number

 3  1:18-cv-1432, Kenneth Pritchard versus Metropolitan

 4  Washington Airports Authority.

 5         Counsel, will you please note your

 6  appearances for the record.

 7         MS. REN:  Good morning, Your Honor.  My

 8  name is Nina Ren, and I have with me at the bench

 9  Mr. Richard Renner and the plaintiff, Kenneth

10  Pritchard.

11         THE COURT:  All right.

12         MS. REN:  I'm handling the summary judgment

13  motion today and Mr. Renner will be handling the

14  opposition to the motion in limine that defendant

15  filed.

16         THE COURT:  All right.  Very good.

17         MR. SANTINI:  Good morning, Your Honor.

18         THE COURT:  Good morning.

19         MR. SANTINI:  Joe Santini on behalf of the

20  Metropolitan Washington Airports Authority, and with

21  me is my partner, Lindsay Thompson.

22         THE COURT:  All right.  We're here on two
```

1  motions.  The first is defendant's motion for summary

2  judgment.  I reviewed the briefing in the case.  I

3  would be pleased to hear further from counsel.

4        MR. SANTINI:  Thank you, Judge.  Judge,

5  basically, as Your Honor has probably seen, there is

6  a lot of paper in this case, but it really boils down

7  to was Mr. Pritchard terminated in February of 2017

8  in an act of retaliation either under Title VII or

9  under the two statutes that he cited, the American

10  Recovery and Reinvestment Act or the National Defense

11  Authorization Act.

12        We don't believe, Judge, there's really any

13  genuine dispute of material fact which shows that he

14  was terminated in retaliation under any of these

15  laws.  For one, Judge, Mr. Pritchard does call into

16  question the credibility of four witnesses in his

17  opposition of summary judgment, Morris Kletzkin, the

18  investigator, Tanisha Lewis, Nancy Robinson and Gail

19  Endicott, who were all witnesses regarding

20  Pritchard's conduct, most specifically in how he

21  interacted and treated Gail Endicott.  But tellingly,

22  Judge, he does not call into question the credibility

1   of Anthony Vegliante.  Mr. Vegliante, of course, was

2   Pritchard's direct supervisor and the deciding

3   official when it came to his determination.

4        The facts that we believe are not disputed,

5   Judge, is that Ms. Endicott made a complaint to

6   Ms. Robin Wade, the manager of Labor and Employee

7   Relations, on November 2, 2016, complaining about

8   Pritchard's conduct towards her and how it was

9   affecting her emotionally and physically.  And

10  Ms. Wade advised Mr. Vegliante of Ms. Endicott's

11  complaint.  It was deemed to be serious enough that

12  an investigation should be done, and that was set up

13  by Mr. Heppen, associate general counsel, by

14  retaining Mr. Kletzkin, outside counsel, to conduct

15  that investigation.

16        Mr. Kletzkin conducted the investigation.

17  He interviewed I believe it was 14 witnesses total,

18  including Ms. Endicott and Mr. Pritchard.  He

19  concluded that Ms. Endicott's allegations were

20  substantiated, and he wrote a substantial report,

21  which I know Your Honor has probably seen --

22        THE COURT:  Yep.

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1              MR. SANTINI:  -- with regard to his

 2   findings for that investigation.  Mr. Vegliante

 3   testified he got that report.  He was disturbed by

 4   what he read in the report.  He testified he did not

 5   know any of this was going on prior to this

 6   investigation and the findings made by Mr. Kletzkin.

 7   And he found that not only the conduct with regard to

 8   Ms. Endicott and others in that department who are

 9   complaining to Mr. Kletzkin in the investigation, he

10   found not only that very disturbing but the

11   insubordination that was also revealed where

12   Mr. Pritchard was referring in staff meetings to

13   Mr. Vegliante, his boss, as an idiot and Mr. Potter,

14   the CEO of the Airports Authority, as incompetent.

15   And Mr. Vegliante concluded that given all of this,

16   he really didn't have much of a choice.  He needed to

17   terminate Mr. Pritchard's employment.  He lost

18   confidence in him as a manager.

19              None of that is really called into question

20   here, Judge.  It's not disputed.  I would remind Your

21   Honor, as I know you know, that this Court cannot sit

22   as a super personnel department in this case.
```

1   Whether Mr. Vegliante was right or wise to do what he

2   did is really not at issue here.  What matters is

3   that he did it for the reasons that were stated,

4   which is that he found these investigations to be

5   credible and disturbing and acted as he thought he

6   had to in accordance with those findings.

7          In addition to no credibility argument

8   about Mr. Vegliante, I'd also note, Judge, there's

9   been no cat's paw argument advanced in this case.

10   Nobody -- there's been no allegation, let alone

11   evidence, that Mr. Vegliante was the cat's paw of

12   Mr. Potter or Mr. Sunderland or anyone else in this

13   matter.  So I don't think there's any reasonable

14   argument that can be made that he was really just

15   doing this to help out somebody else.

16          Judge, getting more specifically to the

17   retaliation claim that's Count I of the amended

18   complaint, we have, of course, have argued that

19   Mr. Pritchard has not made out a prima facie case of

20   retaliation.  For one, he has not shown that there

21   were materially adverse actions that were brought

22   against him, of course, other than the termination in

```
 1    February of 2017.  There's a litany of things, as

 2    Your Honor has seen, in the amended complaint that he

 3    complains about that he claims all were retaliatory,

 4    but they really amount to nothing more than slights.

 5    He wasn't invited to a meeting here, he wasn't

 6    involved in a policy decision there.

 7            There's nothing else that was done under

 8    Vegliante that would amount to a materially adverse

 9    action other than the termination, of course, in

10    February of '17.  So, you know, from that

11    perspective, Judge, all of these discrete acts of

12    retaliation that he lists in his complaint are not

13    actionable.

14            We would also note, Judge, of course,

15    there's a causal connection problem with regard to

16    the majority of these actions.  These -- a lot of

17    these alleged materially adverse actions occurred as

18    long ago as 2010 under a different supervisor and

19    under a whole different system at the Airports

20    Authority, which was, of course, investigated by the

21    DOT IG's Office.  There was a big audit done, there

22    were a lot of findings made and there were a lot of
```

1    changes made at the Airports Authority, including

2    getting rid of -- he resigned but he had no choice --

3    Mr. Pritchard's former supervisor, R.L. Williams, of

4    whom Mr. Pritchard complains of precipitously.  But

5    Mr. Vegliante, who was hired in May of 2013, can't be

6    called to task for what may have been done by

7    Mr. Williams.

8            And the Airports Authority, by and large,

9    rectified all the things that Mr. Pritchard

10   complained of.  He had complained he had been

11   forcibly moved to a different office.  Well,

12   Mr. Potter took care of that and had Mr. Pritchard

13   moved back to his old office.  Mr. Pritchard claimed

14   he had been made into a non-exempt employee under

15   FLSA because they had taken away his direct reports.

16   This was done, again, by Williams.  Mr. Potter fixed

17   that as well.  The reports were restored to

18   Mr. Pritchard.  He was, again, a manager at the same

19   position he had been before Williams had acted that

20   way.

21           Judge, I would also note that, you know,

22   there is a timeliness issue with regard to a lot of

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1    these discrete acts of retaliation because of the
 2    180-day period.  Mr. Pritchard filed this charge of
 3    discrimination on August 2, 2017, which basically
 4    means any discrete acts that occurred before February
 5    3, 2017, with the time barred are nonactionable.
 6    That's under, of course, the Supreme Court's Amtrak
 7    versus Morgan case, 536 U.S. 101.  And, you know, for
 8    that matter, basically there's nothing, other than
 9    the termination, that would even still be timely.
10             Furthermore, Judge, even if Your Honor
11    concluded there was enough for a prima facie case of
12    retaliation, we would argue that the Airports
13    Authority, of course, has produced a very legitimate
14    nondiscriminatory retaliatory reason for the action
15    it took regarding Mr. Pritchard's termination in
16    February '17.  There was a complaint by Gail Endicott
17    of harassment.  It was investigated.  It was found to
18    be credible.  And Mr. Vegliante not only found that
19    very disturbing but, again, the insubordination that
20    was also discovered during that investigation.  And
21    so there is a non-retaliatory reason here for what
22    happened.
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1            Then, of course, the burden shifts back to
 2   Mr. Pritchard to show that this was a pretextual
 3   termination and that the reason -- the reasons shown
 4   by Kletzkin's investigation were not the actual
 5   reasons for termination, but he can't do it, Judge.
 6   Again, he's focusing on minor discrepancies between,
 7   you know, the -- well, more specifically, he says
 8   Gail Endicott was lying.  He says Gail Endicott was
 9   trying to protect her job and lied to Ms. Wade and
10   lied to Mr. Kletzkin, lied to Mr. Vegliante.
11            Frankly, Judge, I don't think it matters if
12   she lied or not.  What matters is that Ms. Wade,
13   Mr. Kletzkin and Mr. Vegliante believed her, and they
14   were reasonable in their beliefs because the
15   investigation corroborated her story by other
16   witnesses.  So there was a reasonable belief that
17   what she was telling them was true, and they're
18   entitled to rely on that in making their
19   determination to terminate employment.  Again,
20   whether Mr. Vegliante was correct or not is not for
21   this Court to decide.
22            I'll turn then to Count III, Judge, the
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
1    hostile work environment count.  Count II, of course,

2    was raising sex discrimination, which it appears that

3    Mr. Pritchard has abandoned.  So I believe that I

4    don't have anything to say on that unless Your Honor

5    has any specific questions.

6              But Count III, the hostile work

7    environment, again, for a hostile work environment

8    complaint to be timely, the last act of hostile work

9    environment must have occurred within the 180-day

10   period prior to filing the charge.  Again, that takes

11   us to February 3, 2017.  There's really only one

12   adverse act that occurred after February 3, 2017,

13   Your Honor, and that's, of course, Mr. Pritchard's

14   termination on February 7, 2017.  And termination is

15   not a hostile work environment claim.  It is a

16   discrete act of retaliation, and that's what he's

17   claimed it as.  And so, frankly, Judge, there is

18   nothing in this case that is timely regarding hostile

19   work environment.

20             What's more, Judge, Mr. Pritchard has not

21   make a prima facie case of hostile work environment.

22   To do so, he would have to show unwelcomed conduct
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1    that was based on one of his protected
 2    characteristics that was sufficiently severe or
 3    pervasive to alter the conditions of employment and
 4    create an abusive work environment and for that was
 5    imputable to the employer.  And he must prove that he
 6    would not have been harassed but for the protected
 7    characteristic.
 8            Well, what's the protected characteristic
 9    here that he's complaining of?  We could have said
10    maybe it was that he was a white man, but that's
11    apparently out of the case because he's withdrawn
12    Count II.
13            So there is no protected characteristic
14    here that he's alleging was, you know, involved in
15    this harassment that he supposedly was subjected to.
16    So he can't make a prima facie case on that, Judge.
17    He also -- there's no protected characteristic.
18            There's also no evidence of any
19    sufficiently severe or pervasive harassment that he
20    was subjected to.  Again, the stuff in the complaint
21    and the evidence in the case is it's slight.  You
22    know, he wasn't invited to a particular meeting or he
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1   wasn't invited to participate in a particular policy

 2   decision or procedure.  This is not the kind of stuff

 3   that, again, in Amtrak versus Morgan, the Supreme

 4   Court found to be actionable with regard to hostile

 5   work environment where they look at the frequency of

 6   the discriminatory conduct, the severity, whether

 7   it's physically threatening or just merely an

 8   offensive utterance and whether it reasonably

 9   interferes with work performance.  Mr. Pritchard

10   can't make out any fact that supports a finding of

11   hostile work environment under that standard.

12           With regard to Count IV, Judge, that's the

13   count where Mr. Pritchard alleges he was terminated

14   in retaliation for conduct allegedly under the

15   American Recovery and Reinvestment Act and the

16   National Defense Authorization Act.  For that, Judge,

17   Mr. Pritchard has to show that he made a protected

18   disclosure, that he suffered a reprisal and that the

19   protected disclosure was a contributing factor in the

20   reprisal.  And even if he could prove those things,

21   then the employer can rebut that by showing that it

22   would have taken the same action in the absence of
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1   the disclosure.

 2          It kind of seems to be, Judge, a

 3   modification of the McDonnell Douglas burden shifting

 4   framework that we all know under Title VII, very

 5   similar I would say.  And here, Judge, first of all,

 6   he can't even make the prima facie case of it because

 7   he has to show that his disclosure, the protected

 8   disclosure relates to the use of covered funds under

 9   the act and that it involved a substantial and

10   specific danger to the public safety relating to the

11   implementation or use of the covered funds.

12          There were no covered funds that were

13   applicable here to these alleged disclosures.  As the

14   affidavits showed in the motion for summary judgment,

15   Judge, the covered -- the functions to which the

16   Airports Authority got money under grants, under ARRA

17   didn't involve the police dispatch function, which is

18   what Mr. Pritchard is complaining that he

19   whistle-blew on, if you will.  It also doesn't show a

20   substantial or specific danger to public safety.

21          As the affidavit that Mr. Bryan Norwood,

22   the vice president of public safety and former chief
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
1    of police at the Airports Authority, who was also the

2    chief of police down in the city of Richmond for

3    quite a while, police complaining about dispatch

4    taking too long to give them some information is

5    fairly routine and typical among police departments.

6    It does not create any kind of substantial or

7    specific danger to public safety, and it certainly

8    isn't related to the implementation of any covered

9    funds because, again, there were no covered funds

10   being used for police dispatch under ARRA at the

11   Airports Authority.

12           And I would also lastly note that the

13   reasonable belief, Judge, is not only a subjective

14   standard but it's an objective standard that the

15   courts will look to.  So even if Mr. Pritchard

16   subjectively believes that he was a whistle-blower

17   under ARRA and that there was a substantial and

18   severe danger to public safety from this, we would

19   submit there really could be no objective finding to

20   support that.

21           Under the NDAA, Judge, that applied only to

22   grants after July 1, 2013.  So, again, the only thing
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

1    that's left that he complains of under that would be

2    this complaint to Mr. Heppen apparently that was made

3    on November 18, 2016, about the police dispatch

4    function, but there's no evidence at all that this

5    complaint that Mr. Pritchard made was made to a

6    covered person under the act, which is a management

7    official or other employee who has the responsibility

8    to investigate the applicable misconduct.

9            Mr. Heppen, as he testified in his

10   affidavit, is not that guy.  It should have gone to

11   the Department of Audit at the Airports Authority or

12   to Mr. Pritchard's supervisor, who would have then

13   advanced it to the Department of Audit.  And, again,

14   we get back to the same objective standard that has

15   to be shown involving a substantial and specific

16   danger to public safety, and that simply has not been

17   shown here.

18            Count V, Judge, the last count in

19   Mr. Pritchard's complaint, deals with a hostile work

20   environment claim under, again, the two acts, ARRA

21   and NDAA.  We've been unable to find any support in

22   the statute or in case law that makes hostile work

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1   environment actionable under either one of those

 2   statutes.  And what's more, even if it were, we would

 3   submit, Judge, that Mr. Pritchard failed to exhaust

 4   his administrative remedy with regard to a hostile

 5   work environment claim under those statutes because

 6   he didn't raise it in his letter to the DOT OIG where

 7   he complained he was a whistle-blower.  So having

 8   failed to exhaust, even if it were actionable, he

 9   wouldn't be able to pursue it here.  Thank you.

10           THE COURT:  All right.  Thank you.

11           Counsel.

12           MS. REN:  Fundamentally, there is

13   sufficient doubt regarding the genuineness of the

14   defendant's explanation for why they fired

15   Mr. Pritchard sufficient to warrant a jury's

16   consideration of possible alternative and

17   discriminatory motivations.

18           I'd like to begin by kind of focusing on

19   what might not have been emphasized enough in the

20   underlying briefs --

21           THE COURT:  All right.

22           MS. REN:  -- or adequately explained.
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

1               I think there is some confusion over the

2    history and continuity of Mr. Pritchard's

3    disclosures.  When he began blowing the whistle on

4    his direct supervisor, vice president Williams, he

5    began doing that in 2004, and he was pretty

6    unsuccessful with getting any relief as to

7    Mr. Williams' wrongdoing until approximately 2011

8    when Congress became evolved, the DOT OIG

9    investigation sprang forward, and then ultimately,

10   general counsel Sunderland, who had been general

11   counsel since 2008, finally directed an investigation

12   into Mr. Williams and then he was removed from the

13   Authority.

14               During this time, his new supervisor, CEO

15   John Potter, came into the midst of all this, was

16   Mr. Pritchard's supervisor for a brief period of time

17   before he hired the current supervisor who did fire

18   Mr. Pritchard, Anthony Vegliante, in 2013.

19               From the moment that Mr. Potter came to the

20   Authority and when Mr. Vegliante came to the

21   Authority, Mr. Pritchard disclosed to them that he

22   was blowing the whistle on Mr. Williams, that he

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1   believed Mr. Williams had engaged in significant
 2   wrongdoing, including fraud, and that he was
 3   experiencing retaliation.  And so he has it in
 4   writing to Mr. Vegliante that he -- on June 27, 2013,
 5   for example, and this is our Exhibit 17, that it is
 6   almost unbelievable that MWAA did not care to be true
 7   the contents and requirements of the DOT OIG report
 8   even forced new VP for HR recruitment and selection.
 9           So he made well known that he was a
10   participant in the DOT OIG investigations, that he
11   was very against Mr. Williams' actions and that he
12   still needed relief.
13           I think the history and the continuity of
14   all this renders this a material issue that a
15   reasonable jury could conclude has to do with the
16   motive of Vegliante and upper management at the time
17   of Mr. Pritchard's removal.  They were aware of his
18   involvement with the underlying investigations.  They
19   knew that Williams, who had been there for a long
20   time, was removed because, in part, of his
21   disclosures.  And because he was also reporting on
22   new management's wrongdoing, he very well could have
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1   unleashed the same level of scrutiny that prior

 2   management had undergone.  So I think a reasonable

 3   jury could find that the new management wanted to

 4   find a way to fire Mr. Pritchard before

 5   Mr. Pritchard's disclosures escalated into what had

 6   occurred before.

 7          Going into defendant's credibility

 8   determinations regarding the witnesses that

 9   Mr. Kletzkin interviewed, the big question there is,

10   is there any reason to disturb Mr. Vegliante's -- or

11   Mr. Kletzkin's determination of credibility based on

12   the investigation?  And our position is that there is

13   reason to disturb it because that is evidence.  To

14   the extent that the witnesses were not credible or

15   that there were obvious holes in the investigation,

16   that evidence supports our contention on pretext and

17   on motive that the investigation was used not to find

18   out what really happened but to support a

19   predetermined decision to get rid of Mr. Pritchard.

20          THE COURT:  Well, the issue really comes

21   down to whether you're assuming there's a prima facie

22   case.  It's clearly -- there was clearly articulated
```

1   a legitimate business reason.  I don't think you

2   dispute that.  The issue is whether there was -- it

3   was pretextual for discrimination and retaliation.

4   And that issue reduces to whether Mr. Vegliante

5   actually believed that -- whether it was -- whether

6   Mr. Vegliante's stated reason was, in fact, the real

7   reason, which comes down to whether he had an honest

8   belief based on reasonable articulable facts.

9          And the question is, what evidence is there

10  in the case that would allow a jury to conclude that

11  Mr. Vegliante either was acting for reasons other

12  than what he said and that he did not -- or that he

13  did not reasonably rely on articulable facts, which

14  was the Kletzkin report?

15         And my question is, is there any evidence

16  that Mr. Vegliante had reason to believe that, in

17  some fashion, the Kletzkin report had these flaws

18  that you mentioned?  The report mentions that there

19  was a mixture of testimony from the various

20  witnesses.  Some supported the complainant's

21  complaint; others didn't in certain respects,

22  although they all seem to corroborate some aspect of

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1    what was being complained about.

 2            So what was it -- what is it that would

 3    allow a jury to conclude that Mr. Vegliante

 4    terminated Mr. Pritchard for reasons other than what

 5    he said, which was the results and information in the

 6    Kletzkin report?

 7            MS. REN:  I think there are a couple of

 8    categories of evidence that support our contention

 9    here.  I think one of it is that when the complaint

10    was filed by Ms. Endicott, she filed the complaint

11    against both Mr. Pritchard and Peter Delight

12    (phonetic).  But when Robin and Mr. Vegliante kind of

13    moved it forward in the investigation, the focus was

14    solely on Mr. Pritchard.  So I think that's one

15    supportive piece of evidence that he was not intent

16    on this investigation to be a genuine, truth-finding

17    investigation.

18            Additionally, his allegation that he was

19    disturbed by what was uncovered I think is another

20    piece or category of evidence that supports our

21    contention.  The defendant says it was because Gail

22    Endicott alleged that the behavior -- that it was
```

1    important that the behavior caused her physical and

2    emotional harm.  However -- and Mr. Vegliante

3    apparently gave great credence to that.  However,

4    Mr. Pritchard has complained to Mr. Vegliante himself

5    that the retaliation was making him ill.  He said to

6    Mr. Vegliante, This continuing retaliation is worse

7    than disconcerting.  It has ill effects on my

8    well-being and on my work.  And that's Plaintiff's

9    Exhibit 16.

10         He has himself complained about being

11   emotionally harmed by the reprisal.  No investigation

12   was done by Vegliante as far as we can tell and no

13   relief was provided for Mr. Pritchard.

14         Additionally, Mr. Vegliante was the

15   first-level supervisor for Mr. Pritchard.  It means

16   that he was present at the HR manager meetings.  It

17   means he was there and oversaw Mr. Pritchard's work.

18   He signed off on his performance appraisals since he

19   had been there except for, I think, one, potentially.

20   He was aware of who -- of Mr. Pritchard's character

21   and who he was, and we don't really dispute that,

22   occasionally, he was loud or that, on occasion, he

1   has used profanity.  I think the point is they kind

2   of -- Mr. Vegliante was aware of that and then

3   exaggerated the impact of it to reach the conclusion

4   that he wanted to reach.  And I think that is a jury

5   question, whether or not a reasonable jury could

6   conclude that that is what occurred.  There are

7   disputes of facts here that would make it a jury

8   question.

9           THE COURT:  All right.

10          MS. REN:  One more thing about

11  Ms. Endicott's complaint, and that is that I think

12  this is, again, a question for the jury because a

13  reasonable jury could conclude because Mr. Kletzkin

14  conducted the investigation and given the importance

15  the defendant now places on the -- Ms. Endicott's

16  report that she felt harmed, that there was no

17  corroboration whatsoever on what the cause of the

18  harm, that they basically assumed that because she

19  said that Mr. Pritchard caused the harm.  There's no

20  corroboration of it.  She was undergoing a lot of

21  other health issues at the time.  She was pretty open

22  about when other people caused her emotional harm.

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1   Why this particular statement and using this

 2   particular statement to support Mr. Pritchard's

 3   firing when she's used the same statement of being

 4   impacted in terms of her health by other staff's

 5   behavior?  For example, Mr. Rumberg -- they didn't

 6   fire Mr. Rumberg.  They didn't conduct an

 7   investigation into Mr. Rumberg.

 8            I do want to go a little bit into the

 9   protected disclosures --

10            THE COURT:  All right.

11            MS. REN:  -- that Mr. Pritchard made.  So

12   as the briefing and the amended complaint makes

13   clear, he has three buckets of disclosures, Title

14   VII, ARRA and NDAA.  We're not solely relying on the

15   history of disclosures, although we think that is

16   material to the case.  I think part of the

17   materiality of the history of his complaints is that

18   he didn't stop complaining.

19            And so in -- as recently as October 19,

20   2016, before the administrative investigation, he had

21   a meeting with the board chairman, Griffin, Anthony

22   Griffin, about recurring violations of federal
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

1    employment laws, including Title VII, violations of

2    the terms and conditions of federal grants agreements

3    that applied to the rail project and involved federal

4    grant money, and that's in our Exhibit 4 in his

5    declaration, paragraph 5.

6              I think at this point in time, because

7    Mr. Potter did intrude on that meeting, did observe

8    that Mr. Pritchard was giving another PowerPoint,

9    that a reasonable jury could conclude that Mr. Potter

10   viewed that as another instance of Mr. Pritchard

11   blowing the whistle on the Authority.

12             Additionally, on December 28, 2016, he had

13   his administrative interview with Mr. Kletzkin.

14   During that interview, he talks at length about his

15   various disclosures, and that involved Title VII and

16   it involved federal funds.  To the extent that

17   there's argument over the lack of specificity during

18   that interview, that he didn't say this specific

19   grant or this specific, you know, incident, I don't

20   think that is material to the question of whether or

21   not it's still protected activity.  The fact that

22   he's saying I think the Authority is breaking the law

1    and still breaking the law, that is sufficient to

2    give it protected status without him having to then

3    show extensive, exhaustive evidence on what exactly

4    the violations were.

5              Throughout 2016, directly to Mr. Vegliante,

6    he was also reporting Title VII preferential

7    treatment.  Specifically in July 2016, he disclosed

8    to Mr. Vegliante that he thought that the Authority

9    was violating Title VII with respect to Reggie Clark.

10   In June and July of 2016, he told Mr. Vegliante that

11   there seems to be adverse treatment in how the age

12   COLA pay impacted women.  And January 14, 2016,

13   during the HR manager meeting, which Mr. Vegliante

14   was part of, he reported that the Authority continued

15   to fail to address the concerns raised by DOT OIG

16   within their reports and that -- and while continuing

17   to violate Title VII.  So I think it's clear that he

18   was, in 2016, still making disclosures to various

19   management.

20              And addressing the defendant's specific

21   argument on the fact that -- on the cat's paw theory,

22   I think from our amended complaint and from our

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

1   various responses, it's clear that we are saying

2   there is a group of people involved in their

3   retaliation against Mr. Pritchard, including the

4   hostile work environment against Mr. Pritchard and

5   leading up to the termination.

6            THE COURT:  Do you think there's any

7   difference -- or how do you think there is any

8   difference between the causation analysis under ARRA

9   and NDAA and under McDonnell, legitimate reason

10  pretext analysis?

11           MS. REN:  I think the difference would be

12  that under NDAA and ARRA, it's a contributing factor,

13  and so that might impact a causation analysis.

14           THE COURT:  Right.  But in terms of,

15  essentially, the defense, the defendant's defense

16  that it would have terminated in any event, how would

17  the analysis be different?

18           MS. REN:  The defendant will have to

19  demonstrate by clear and convincing evidence that

20  they would have terminated him absent the

21  whistle-blowing.

22           THE COURT:  All right.

```
 1              MS. REN:  And our condition is here they
 2   have not done it by clear and convincing evidence,
 3   nor under the Title VII.
 4              THE COURT:  All right.
 5              MS. REN:  I want to address defendant's
 6   argument of his disclosure to Mr. Heppen on November
 7   18, 2016, which related to the substantial and
 8   specific danger to public safety.
 9              Defendant calling it a routine gripe, I
10   think that shows that this is a dispute of material
11   fact and one reserved for the jury.  I think the
12   question here of whether or not Mr. Pritchard had a
13   reasonable belief that what he is complaining about
14   in terms of the untimely checks, that he had a
15   reasonable belief in it because, as shown by the
16   history of his disclosures and his involvement with
17   the DOT OIG, he's been told before that this is
18   routine griping by him.  And under Williams, he's
19   been shut down before when he tried to blow the
20   whistle on Mr. Williams, and that resulted in DOT OIG
21   investigations, congressional interest and then the
22   ultimate removal of Mr. Williams.
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
1              So the fact that there is an officer saying

2    -- from the defendant saying, I view this to be

3    routine gripes, I think a jury could reasonably

4    conclude that is yet another incident of the

5    defendant not really addressing compliance, and a

6    reasonable jury could infer from this that routine

7    gripes means lots of people are complaining about it.

8    It means that it could be a problem.  So these are

9    all inferences that a reasonable jury could draw, and

10   the defendant is not entitled to them at the summary

11   judgment stage.

12              THE COURT:  All right.

13              MS. REN:  I think to the extent that the

14   defendants are agreeing that there is no actual

15   violation of NDAA and ARRA in terms of there was no

16   actual use of federal funds in the salaries of their

17   employees or that the public safety communications

18   control unit did not actually receive any ARRA money,

19   I think that shifts the argument again when it should

20   be focused on whether or not Mr. Pritchard had a

21   reasonable belief in whether or not ARRA or NDAA was

22   violated.  Whether or not it, in fact, was violated
```

```
 1    is another question that's irrelevant.

 2              THE COURT:  I understand.

 3              MS. REN:  Okay.  Going into the timeliness

 4    issue with the 300 days versus 180 days --

 5              THE COURT:  Yep.

 6              MS. REN:  -- I actually don't think this is

 7    an issue that necessarily needs to be decided because

 8    so long as there's no one timely incident that is

 9    sufficiently related to the hostile work environment

10    claim, that's what we need for a timely hostile work

11    environment claim.

12              And so our amended complaint says the

13    termination is part of the hostile work environment.

14    That's paragraph 60 and 69.  And our hostile work

15    environment claim states that it's based on reprisal.

16              THE COURT:  Well, what authority would you

17    cite for that proposition?  Isn't it fairly settled

18    that the retaliation itself is a discrete act, but

19    it's separate and apart from hostile work

20    environment?

21              MS. REN:  I think under Green and Brennan,

22    a discrete action can be part and parcel of a hostile
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
1    work environment event.  Just because it is a

2    discrete action does not render it separate from a

3    hostile work environment.  I think the relevant

4    inquiry is are they all sufficiently related.

5              THE COURT:  All right.

6              MS. REN:  And then going deeper into the

7    hostile work environment allegation, Mr. Pritchard's

8    testimony is sufficient to create -- to defeat

9    defendant's motion for summary judgment, especially

10   since it has been corroborated by various exhibits

11   and e-mails and other people's declarations.  The key

12   inquiry is his declaration is based on his personal

13   knowledge.  And so he's able to use his personal

14   knowledge to dispute the defendant's allegations in

15   their affidavits, and that, in and of itself, creates

16   -- makes it a jury issue.

17             There is one issue regarding the

18   retaliation as a basis for hostile work environment.

19   I think it is well-settled that retaliation is a

20   protected basis for hostile work environment.  So

21   even though he has withdrawn Count II, which is the

22   race and sex discrimination claim, his hostile work
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

 1    environment, under reprisal, is still a viable claim.

 2         I was going to touch upon the defendant's

 3    argument in its reply regarding the compliance with

 4    Local Rule 56(B), but we also have --

 5         THE COURT:  That's not necessary.

 6         MS. REN:  Okay.  Unless Your Honor has any

 7    specific questions, I think I would just conclude by

 8    saying there are a number of reasonable inferences

 9    that could be made in favor of the plaintiff,

10    Mr. Pritchard.  There are a number of material

11    disputes of facts specifically regarding

12    Mr. Vegliante's motivation, the upper management's

13    motivations and how they went about firing him and

14    getting rid of him such that a trial is warranted on

15    all of his claims.

16         THE COURT:  All right.  Thank you.

17         Counsel.

18         MR. SANTINI:  Thank you, Judge.  I will not

19    rehash everything I've already said, but I do want

20    to --

21         THE COURT:  Well, before you do -- and you

22    can work this in however you want -- as I understand

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1   the plaintiff's view that the -- there's a jury issue

 2   relating to whether Vegliante's reason for

 3   terminating was the real reason based on a number of

 4   things.

 5           One is that the complainant filed a

 6   complaint against two people, Mr. Pritchard and

 7   another person, but Mr. Pritchard was the only one

 8   investigated.  Secondly, that Mr. Pritchard himself

 9   claimed he had been harmed by various actions, but

10   there was no investigation.  The third is what

11   strikes me as sort of the Casablanca issue, that he

12   was shocked that this was going on when, in fact, he

13   knew it had been going on for some time.  And the

14   last is that there was no corroboration of the

15   complainant's harm being caused by Mr. Pritchard's

16   actions as opposed to other aspects of her life.

17           MR. SANTINI:  Sure.  And I'll start with

18   those things, Judge.

19           THE COURT:  Yeah.

20           MR. SANTINI:  First of all, I am not aware

21   of anything in the record in this case that shows

22   that Ms. Endicott complained of Mr. Delight.
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1              THE COURT:  I didn't recall that either

 2      but --

 3              MR. SANTINI:  Yeah.  We know of no such

 4      complaint.  There were some e-mails that were

 5      exchanged back and forth where she was upset that

 6      Pete Delight had taken a master key and gone in her

 7      office at one time to get records.  That's not the

 8      kind of complaint that she raised against

 9      Mr. Pritchard, totally different and doesn't rise

10      nearly to the level of what she's complaining about

11      Mr. Pritchard.  And when she approached Ms. Wade on

12      November 2, 2016, to complain about what was going

13      on, it was Mr. Pritchard's conduct that she

14      complained about, not Mr. Delight.

15              So there was no complaint made about

16      Mr. Delight.  So that's how I would respond to that,

17      Judge.

18              THE COURT:  All right.

19              MR. SANTINI:  With regard to Mr. Vegliante

20      not being disturbed by what he found in the

21      investigation because he knew Pritchard's character,

22      he might have known that Pritchard was a loud guy,
```

1    but he didn't know any of the stuff this

2    investigation would be.  He testified to that.  It's

3    in his affidavit and in his deposition transcript,

4    Judge.  He didn't know that Mr. Pritchard was abusing

5    Gail Endicott or what was going on with regard to the

6    two of them or what Tanisha Lewis and Nancy Robinson

7    also complained about.  He didn't know any of that

8    stuff, and there's no dispute of material fact that

9    he did.  He also had no idea about this

10   insubordination, and he was very clear about that in

11   his testimony, too.  He didn't know Pritchard was

12   going around calling him an idiot.  Obviously, that

13   upset him.  It was very disturbing to him, and it

14   certainly played into his decision to terminate

15   Mr. Pritchard's employment, but it's not retaliation,

16   Judge.  It has nothing to do with anything under

17   Title VII or ARRA or NDAA.

18          The reference Ms. Ren made to

19   Mr. Pritchard complaining that the retaliation was

20   making him ill, that was back in 2013, shortly after

21   Mr. Vegliante got there when Mr. Vegliante had been

22   told Mr. Pritchard was taking overtime because he had

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1    now considered himself non-exempt under FLSA.  And I
 2    guess when, you know, Potter returned Pritchard's
 3    direct reports to him, there was some discussion in
 4    the Airports Authority, not decided by Mr. Vegliante,
 5    that Pritchard would have to pay back the overtime he
 6    had received.  And so he sent an e-mail saying, this
 7    is making me ill and is another act of retaliation,
 8    but it didn't happen.
 9            Vegliante met with Pritchard.  He testified
10    in his deposition he didn't make him pay back the
11    overtime.  So it was an nonissue.  Pritchard never
12    made any formal complaint about it.  And to try and
13    say that now they didn't investigate Pritchard's
14    complaint about that is, I think, a little
15    disingenuous.
16            Endicott in her complaint about Mike
17    Rumberg for upsetting her, Mike Rumberg didn't
18    supervise Gail Endicott.  She (sic) wasn't his (sic)
19    boss.  He didn't have any authority over her.  It was
20    Pritchard's conduct, her boss's conduct, the person
21    who had authority over her that upset her, made her
22    physically and emotionally ill and that she found to
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1   be so disturbing, she had to go to Labor Relations

 2   and make a complaint.

 3           She didn't go to Labor Relations and

 4   complain about Rumberg, so there was no obligation to

 5   investigate Rumberg.  There was no complaint made

 6   about Rumberg.  The complaint was about Pritchard.

 7   So to try and equivocate that I think fails.

 8           Some other points, Judge -- and I think

 9   I've addressed the points you've raised.

10           THE COURT:  Yeah, you have.

11           MR. SANTINI:  Okay.  Some other points that

12   I wanted to just address very briefly in response to

13   Ms. Ren's argument, they keep complaining about R.

14   Williams, Judge.  R. Williams was out of the

15   Authority in 2012.  Mr. Vegliante didn't come in

16   until May 2013.

17           What happened under R. Williams, frankly,

18   is totally irrelevant and immaterial to this case,

19   immaterial to summary judgment.  You can't attribute

20   what Williams may or may not have done to Pritchard

21   to Vegliante.  And it's absolutely ludicrous for them

22   to try and say that Vegliante harbored some sort of
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1   animus against Mr. Pritchard based on what a guy who

 2   was let go months before he came on board did.  That

 3   doesn't make any sense, and no reasonable juror could

 4   credit that.

 5           Ms. Ren said that the jury could infer that

 6   the Airports Authority fired Pritchard to prevent

 7   escalation of his repeated disclosures.  That's

 8   complete speculation, Judge.  There's no basis for

 9   that in the record.  There's no evidence of it.  It's

10   exactly the type of speculation and guessing that is

11   not permitted to go to the jury.

12           Ms. Ren talked about a meeting in October

13   2016 that Mr. Pritchard had with an MWAA board

14   member, Tony Griffin, where he supposedly complained

15   about Title VII and grants.  And there's no evidence

16   Potter knew that.  The testimony and the evidence was

17   that Potter walked into it, saw they were meeting and

18   left.  He didn't know what was going on.  He didn't

19   stick around for it.

20           And what's the link to Gail Endicott and

21   her complaint and Vegliante and his reasonable belief

22   that required termination to Potter walking in on
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1    this meeting?  There's not -- there's no evidence,

 2    there's no link.  And, again, I know they made lip

 3    service to cat's paw theory here, Judge, but it's not

 4    in the complaint.  It's been nowhere in the case, in

 5    discovery or the depositions.  There's no evidence of

 6    it and that's why.  That's why we haven't seen it.

 7          They talk about Pritchard engaging in

 8    protected conduct when he complained to Mr. Kletzkin

 9    during Mr. Kletzkin's investigation of Gail

10    Endicott's charges, but, of course, that's not

11    protected activity if the adverse employment act of

12    termination is reasonably contemplated at the time

13    the disclosure is made.

14          And obviously when Gail Endicott made her

15    complaint in November, they decided to get outside

16    counsel to investigate it, and an investigation is

17    ongoing.  There certainly is at least a, you know,

18    reasonable chance that this could result in

19    termination depending on the findings of

20    investigation.  So we would submit that that is not

21    protected activity, Judge, which would somehow

22    protect Mr. Pritchard here.
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1          He keeps talking about the DOT OIG audit

 2   and the Airports Authority's continued violations of

 3   that audit up until the time he's terminated.  I

 4   think, Judge, that's belied by the fact -- and we put

 5   that in evidence with Julia Hodges' (phonetic)

 6   affidavit and the PowerPoint that she had prepared in

 7   2015 -- that the DOT OIG audit was closed out.  The

 8   Airports Authority had already done everything they

 9   were supposed to do under the audit.  The auditor was

10   satisfied.  The OIG closed it.

11          So there's no more ongoing violations of

12   audit that, you know, anybody is trying to prevent

13   anyone knowing about.  It continued on in Pritchard's

14   mind, but it's not a reality, Judge, and it should

15   not be a basis to go to a jury in this case.

16          THE COURT:  When was it closed out?

17          MR. SANTINI:  Judge, it was in my -- one

18   second.

19          It looks like December 28th of 2015, Judge.

20   That's in Ms. Hodges' affidavit, which is Exhibit 1

21   to our reply to the opposition.

22          THE COURT:  All right.
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1              MR. SANTINI:  And then Exhibit 2, which is

 2   a PowerPoint, it may also be in there.  I'm not sure.

 3              THE COURT:  All right.

 4              MR. SANTINI:  And so those are the points I

 5   wanted to raise on rebuttal, Judge.  Thank you.

 6              THE COURT:  All right.  Thank you.

 7              Counsel, let me get back to you on this one

 8   point.  You mentioned that there were two complaints.

 9              MS. REN:  Yes.  It's Defendant's Trial

10   Exhibit 4, which is part of our opposition to motion

11   in limine.  It's Docket Number 64-5.

12              THE COURT:  And what is that?

13              MS. REN:  That is Robin Wade's notes

14   regarding Ms. Endicott's complaint and it says

15   Ms. Endicott's complaint, subject, Kenneth Pritchard,

16   Ken, and Peter Delight.  And it says, Gail Endicott

17   came into my office this morning to file a formal

18   complaint against Ken Pritchard and Peter Delight.

19              THE COURT:  All right.  Okay.

20              MS. REN:  Could I address some of the other

21   points?

22              THE COURT:  Go ahead, briefly.
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1              MS. REN:  Okay.  So I think the questions
 2    regarding Ms. Endicott's health, whether or not she
 3    was being abused, the defendant either cares about
 4    her health or it doesn't.  They're basically saying,
 5    well, if her health is being damaged by others,
 6    that's fine, but if her health is being damaged by a
 7    supervisor, that's somehow more important.  But I
 8    don't think that is substantively coherent.
 9              And going into Mr. Santini's arguments
10    regarding the fact that the violations were closed --
11    the OIG investigations was closed out in 2015, I
12    don't think that actually takes away from plaintiff's
13    reasonable inference -- reasonable inferences for the
14    plaintiff that he was continuing to disclose
15    violations, he was continuing to disclose present
16    violations and that could trigger a reopening of an
17    OIG investigation or new OIG investigation.
18              THE COURT:  Right.
19              MS. REN:  The simple fact that it was
20    closed out doesn't really actually mean it's
21    permanently in the past.
22              THE COURT:  All right.  You want to speak
```

```
 1   to your motion in limine?

 2            MR. SANTINI:  Sure.

 3            THE COURT:  Briefly.  I've reviewed that.

 4            MR. SANTINI:  Judge, we argued in the

 5   motion in limine, of course, anything that occurred

 6   prior to Mr. Vegliante's hiring in May of 2013 should

 7   be excluded because it's irrelevant and obviously the

 8   danger of unfair prejudice and misleading and

 9   confusing the jury as to Mr. Pritchard's complaints

10   about what occurred under R. Williams, which has

11   nothing to do with what occurred under Vegliante.  So

12   we feel that that evidence should be excluded.  That

13   includes the DOT OIG investigation, Judge, which was

14   all done prior to that time.

15            And we also then argued in our motion in

16   limine that the evidence of comparators should be

17   excluded in this case, Judge.  Of course, at that

18   time, we did not realize they were withdrawing Count

19   II.

20            THE COURT:  Okay.

21            MR. SANTINI:  So I think that puts that to

22   rest.  That's pretty much it, Judge.
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1              THE COURT:  All right.  Do you want to
 2   address any of that?
 3              MR. RENNER:  Yes.
 4              THE COURT:  All right.  Go ahead.  I think
 5   a lot of it has been covered already, but go ahead.
 6              MR. RENNER:  Two points I think were not
 7   covered is the way the evidence fits the first
 8   opportunity doctrine, and this is a doctrine that
 9   actually extends the temporal proximity as an
10   indicator of causation when there's a gap in time
11   between the protected activity and the adverse
12   action.  And the Fourth Circuit has adopted and
13   recognized this doctrine in the Price versus Thompson
14   case that we cited in our opposition of summary
15   judgment and in opposition of the motion in limine,
16   but the defendant does not seem to be coming to grips
17   with it, does not address it.
18              And there was ample record testimony in
19   depositions from Potter, Kletzkin and Sunderland that
20   Gail Endicott's complaint was the very first
21   opportunity they ever had to impose any discipline
22   against Ken Pritchard and, of course, they jumped
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1   immediately to terminating him without any

 2   progressive discipline in between.

 3           And the application of the first

 4   opportunity doctrine does support causation and it

 5   connects what happened in 2016 and 2017 with what

 6   happened in 2012 and 2013.  And Potter and Sunderland

 7   and Kletzkin all acknowledge that, you know, this was

 8   their first opportunity.

 9           So when Mr. Santini says that there's no

10   way events in 2012 could be relevant to this case and

11   then jumps immediately to say that it's entirely

12   speculative to think that they wanted to retaliate

13   against him or they were concerned about his future

14   protected activity, it misses the connection between

15   the two.

16           THE COURT:  Is there any evidence that

17   Vegliante consulted with anyone before making the

18   decision to terminate?

19           MR. RENNER:  Well, there's not an admission

20   on that point, but look at this context.  MWAA

21   brought in Jack Potter after Jack Potter had been the

22   Postmaster General of the United States.  And he
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1    actually got a pay raise then by coming to MWAA,

 2    which had authority to pay substantially more than

 3    what the federal government did.  And then Potter

 4    brings in with him a number of the people he worked

 5    with in the Post Office, including Tony Vegliante,

 6    who had served as, you know, the national leader of

 7    HR for the Post Office and now is the leader of HR at

 8    MWAA working with the same relationship he had with

 9    Jack Potter again.

10           So there are circumstances here from which

11    a jury can infer a close-working relationship of

12    loyalty to each other such that if Ken Pritchard is

13    raising complaints that impugn Jack Potter's

14    leadership, that's something Tony Vegliante would

15    care about and would want to protect his supervisor

16    from.  But there's plenty of additional record

17    evidence that Ken Pritchard had been complaining

18    about a retaliation by both Potter and Vegliante and

19    complaining about their shortcomings and addressing

20    the corrections that they just wanted to check the

21    boxes as Pete Delight said in his declaration, that

22    they really did not have their heart in becoming
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1   compliant.  They just wanted the appearance of

 2   compliance.  And that is why Ken Pritchard was such a

 3   threat to them because they knew from the past

 4   experience that Ken Pritchard knew how to elevate an

 5   issue up through, you know, the chain of command to

 6   the board, to a member of Congress, to the DOT OIG.

 7   He did it before.  He got R. Williams out, and they

 8   certainly did not want to see their heads on that

 9   same chopping block.  That's what connects the

10   evidence here.

11           THE COURT:  All right.  Thank you.

12           Santini?

13           MR. SANTINI:  Yeah.  Just a brief --

14           THE COURT:  Yeah.

15           MR. SANTINI:  With regard to the first

16   opportunity argument, we did address it in our reply

17   motion in limine.  Unfortunately, Judge, I didn't get

18   that to you until late yesterday.

19           THE COURT:  Right.  I've seen it.

20           MR. SANTINI:  Mr. Vegliante did have an

21   opportunity to discipline Mr. Pritchard in 2014 but

22   didn't do it, and that was involving a dispute
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1    between Mr. Pritchard and Deborah Lockhart.  And he

 2    testified about that and that deposition testimony

 3    was attached to our motion for summary judgment.  So

 4    it's not a first opportunity.  He just didn't take

 5    the opportunity when he had it in 2014 because he

 6    thought he had resolved it.

 7          In answer to Your Honor's question, there

 8    is no evidence that Mr. Vegliante consulted with

 9    anyone prior to deciding to terminate.  And, in fact,

10    Mr. Potter specifically testified that he did not

11    consult with Mr. Vegliante prior to Mr. Vegliante

12    deciding to terminate employment because he was

13    deliberately keeping himself out of it.  He didn't

14    want to know what was going on because Mr. Pritchard

15    had the opportunity to then grieve that termination

16    to Mr. Potter, and Mr. Potter wanted to look at it

17    with a fresh set of eyes, which would be the

18    reasonable and fair thing to do.

19          So, no, the evidence is contrary that

20    Mr. Vegliante consulted with Mr. Potter or anyone

21    else prior to deciding to terminate employment.  It's

22    just a guess by Mr. Renner that he's trying to
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

```
 1    protect Potter.  There's no evidence to support it.

 2            THE COURT:  All right.  Thank you.  I want

 3    to commend both sides for a very helpful argument.

 4    I'm going to take it under advisement, and I will get

 5    a decision to you just as soon as I can.  All right?

 6    Thank you.

 7            MR. SANTINI:  Thank you.

 8            (Whereupon, at 10:59 a.m., the

 9            proceedings concluded.)

10

11                        *   *   *   *   *

12

13

14

15

16

17

18

19

20

21

22
```

Kenneth Pritchard vs. Metropolitan Washington Airports Authority

1      COMMONWEALTH OF VIRGINIA AT LARGE, to wit:

2          I, LAQUICIA THOMAS, Court Reporter and Notary

3    Public in and for the Commonwealth of Virginia at

4    Large, and whose commission expires February 28, 2022,

5    do certify that the foregoing is a true, correct, and

6    full transcript of the proceedings.

7          I further certify that I am neither related to

8    or associated with any counsel or party to the

9    proceedings; nor otherwise interested in the event

10   thereof.

11

12

13   _____

14   LaQuicia Thomas

15   Notary Public

16   Commonwealth of Virginia at Large

17   Notary No. 7363169

18

19

20

21

22